Proceeding to validate paving certificates by the City of Pensacola, a municipal corporation, against the State of Florida and others. From the decree, the defendants appeal.
Affirmed.
See also 40 So.2d 574.
On February 8, 1949, the City of Pensacola adopted emergency ordinance No. 7-49 authorizing the issuance of $1,700,000 of paving certificates to pay the costs of improving or paving described streets of said city and pledged a portion of the utilities service taxes to pay for the construction thereof. Section One of the Ordinance recites that the revenue certificates are authorized by its charter, being Chapter 15425, Special Acts of 1931, and other applicable provisions of law. Section Two of the Ordinance, supra, made findings: (a) as to certain streets of the city being in a state of disrepair; (b) it is a legal function or duty of a municipality to maintain streets in a safe condition for the inhabitants thereof.
(c) The City of Pensacola adopted an ordinance levying a tax on the sale of electricity, gas, water, telegraph and telephone service; (d) the paving certificates, with interest, will be paid solely from the pledged utilities service taxes or from special assessment lien funds situated on either side of the streets paved and by the use of funds obtained by the issuance of paving certificates; (e) it is contemplated that the pledged utilities service taxes will be sufficient to retire by payment the paving certificates in the sum of $1,700,000, and interest. The general taxing power of the City of Pensacola is no manner pledged or obligated to pay the pavement certificates nor to guarantee the making up or payment *Page 570 
of deficits, if any, arising from the sale of the paving certificates.
Pertinent portions of Ordinance No. 749, supra, are hereinafter stated:
Section 11 viz: "This Certificate is one of an authorized issue of Certificates in the aggregate principal amount of $1,700,000 of like date, tenor and effect, except as to number, (rate of interest) and date of maturity, issued to finance the cost of the improvements of certain streets, avenues and thoroughfares in the City of Pensacola, under the authority of and in full compliance with the Constitution and Statutes of the State of Florida, the Charter of the City of Pensacola, being Chapter 15425, Acts of the Legislature of Florida for the year 1931, as amended and supplemented, and other applicable statutes, and an Ordinance duly adopted by the City Council of said City on , 194 , and is subject to all the terms and conditions of said Ordinance.
"This certificate and the coupons appertaining hereto are payable solely from and secured by a lien upon and pledge of a portion of the net proceeds of the utilities service taxes received by the city in the manner provided in the Ordinance authorizing this issue of Certificates, and does not constitute an indebtedness of the City of Pensacola within the meaning of any constitutional, statutory or charter provision or limitation, and it is expressly agreed by the holder of this Certificate that such holder shall never have the right to require or compel the exercise of the ad valorem taxing power of said City, or the taxation or assessment of real estate in said City, for the payment of the principal of an interest on this Certificate or the making of any sinking fund, reserve or other payments provided for in the Ordinance authorizing this issue of Certificates.
"It is further agreed between the City of Pensacola and the holder of this Certificate that this Certificate and the obligation evidenced thereby shall not constitute a lien upon any property of or in the City of Pensacola, but shall constitute a lien only on the aforesaid portion of the net proceeds of the utilities services taxes received by the City in the manner provided in said Ordinance.
"The City in said Ordinance has covenanted and agreed with the holders of the Certificates of this issue to levy and collect such utilities services taxes as will provide funds sufficient to pay, and out of said funds shall pay as the same shall become due, the principal of and interest on the Certificates of this issue, in addition to paying, as the same shall become due, all reserve or sinking funds or other payments provided for in said Ordinance, and all other obligations payable out of said utilities services taxes, and that the rates of such utilities services taxes shall not be reduced so as to be insufficient to provide funds for such purposes, and said City has entered into certain further covenants with the holders of the Certificates of this issue for the terms of which reference is made to said Ordinance."
Section 12 viz: "12. Certificates not to be Indebtedness of the City. Neither the Certificates nor coupons shall be or constitute an indebtedness of the City, but shall be payable solely from the special funds as herein provided. No holder or holders of any Certificate issued hereunder, or of any coupon appertaining thereto, shall ever have the right to compel the exercise of the ad valorem taxing power of the City, or taxation or assessment in any form of any real property therein, to pay said Certificates or any of the interest thereon, or be entitled to payment of such principal and interest from any other funds of the City the pledged portion of the net proceeds of the Utilities Services Taxes received by the City as provided herein."
Section 13 viz.:
"C. The City does further covenant and agree that as long as any of the Certificates are outstanding and unpaid, as to either principal or interest, accrued or to accrue, or unless payment thereof has been duly provided for, it will not repeal the ordinance enacted May 16, 1932, or the amendment thereto enacted October 8, 1946, levying such Utilities Services Taxes, and will not amend or modify said ordinance in any manner so as to materially impair or adversely affect the pledge of such Utilities Services Taxes made herein, or the rights of the holders of the Certificates, or the rate or amount of such Utilities Services *Page 571 
Taxes. This provision shall not, however, prevent rate revisions for said Utilities Services Taxes as long as the aggregate amount of collections under such revised rates will not be less than the aggregate amount of collections made prior to such revisions. The City does further covenant and agree that so long as any of the principal of or interest on any of the Certificates shall be outstanding and unpaid, or until there shall have been set apart in the Sinking Fund herein established a sum sufficient to pay, when due, the entire principal of the Certificates remaining unpaid, together with interest accrued and to accrue thereon, it will levy and collect such Utilities Service Taxes, as will always provide funds sufficient to pay, as the same shall become due, the principal of and interest on the Certificates, in addition to paying, as the same shall become due, all reserved or sinking funds or other payments provided for in this Ordinance and all other obligations and indebtedness payable out of said Utilities Services Taxes.
"D. The City further expressly represents that it has legal and valid power to continue the levy and collection of said Utilities Service Taxes in the manner provided therein until all the principal of and interest on the Certificates have been fully paid, notwithstanding that the legislative authority contained in the Act may be replaced, amended or modified by the Legislature of Florida prior to such time; and said City further represents that the covenants entered into between the City and holders of the Certificates pursuant to this Section 13 constitutes a valid and legally binding contract between the City and such Certificate-holders not subject to repeal, impairment or modification by the City or the Legislature of the State of Florida."
The Ordinance prescribes the form of the pavement certificates and interest coupons as issued by the City of Pensacola; likewise the time of payment of semi-annual installments of interest, place of payment and a record of registration thereof by said city. It provides for a Paving Certificate Sinking Fund, Reserve Account, and Certificate Retirement Fund. The form of Ordinance No. 7-49 is similar in many respects to the one adopted by the City of Miami and ruled upon by this Court in State v. City of Miami, 113 Fla. 280, 152 So. 6.
The City of Pensacola filed its petition in the Circuit Court of Escambia County, Florida, to validate the paving certificates in the aggregate principal sum of $1,700,000, as provided for by Chapter 75, F.S.A. The State of Florida and a taxpayer of said city were made defendants, pursuant to Section 75.02, F.S.A. Answers were filed by each and considerable testimony heard in the court below on the issues made by the pleadings and on final hearing a decree of validation of the paving certificates in the sum of $1,700,000, according to the prayer of the petition, was made and entered. The State of Florida and taxpayer, intervenor, have perfected an appeal here.
The case of Heriot v. City of Pensacola, 108 Fla. 480,146 So. 654, involved an ordinance adopted by the City of Pensacola under the provisions of Chapter 15425, Special Acts of 1931. The ordinance authorized a tax of four per cent on the purchase of electricity, water, gas and telephone service within said city. It was contended that the ordinance was void for various reasons. We sustained the ordinance against the attack made, thereby holding that the City of Pensacola had the power to levy a tax on the purchases of electricity, gas, water and telephone services within the City of Pensacola. See Chapter 22829, Laws of Florida, Acts of 1945, F.S.A. § 167.43 — 1.
The case of State v. City of Fort Myers, 156 Fla. 681, 24 So.2d 50, involved certificates of indebtedness payable from the income of enumerated utilities owned by said city. The city owned and operated a sewer system. It supplied its inhabitants with gas and water. For various reasons it became necessary to improve and extend the service of the utilities to other sections of the city and its inhabitants. In financing the project the city by ordinance combined the three utilities and pledged the net revenue of the consolidated operation to the payment and retirement of $550,000 in Municipal Utility Revenue Certificates. The issuance of the Revenue Certificates of the City of Fort Myers was affirmed by this Court. *Page 572 
The City of Pensacola has the charter power and authority to construct drains and sewers within the incorporate limits of said city. Likewise, the power to regulate and control the grading, construction and repair of the streets and sidewalks and to charge reasonable assessments against the property owners for benefits received. The general powers conferred on all municipalities of Florida supplement the now existing charter powers possessed by the City of Pensacola. See Chapter 167, F.S.A.
Appellants' question one is viz.: Does the City of Pensacola have power under its charter or other statutory authority, to pledge a portion of the net proceeds of the utilities services taxes to the payment of paving certificates without the issuance thereof first having been approved by the qualified electors of the City of Pensacola, pursuant to the requirements of Section 6, Article 9, of the Constitution of Florida, F.S.A.?
Section 1(4) of Chapter 15425, Special Acts of 1931, being the Charter of the City of Pensacola, authorizes the city to issue and sell bonds on the security of any excess property, or of any public utility owned by the city, or the revenue thereof, or both, including in the case of a public utility, if deemed desirable by the city, a franchise stating the terms upon which * * * the purchaser may operate such utility.
From the evidence adduced, the lower court made findings and decreed that the City of Pensacola received, annually, approximately $220,000 from the utilities tax and the amount went into the general revenue fund of the city and the repair, construction and maintenance of the streets, drains and sewers have been maintained largely out of the general revenue fund at an annual cost of approximately $200,000. It is pointed out that after the execution of the paving certificates, the general revenue fund of the city will be relieved of the costs of maintenance of the streets and sewers at an annual cost of $200,000, as fifty miles of additional streets will be constructed and liens for improvements will be entered for the city against property abutting on streets so improved. The paving certificates are to be retired within twenty years and payments of all annual maturities, with interest, over the twenty year period, range from $60,000 for the year 1950 to $116,000 in 1969. Funds arising from Street improvement liens against abutting property may be used for repairs, construction and maintenance of streets, drains and sewers of the city, if desired.
The repair, pavement and construction of streets and sidewalks are clearly municipal purposes. The streets designated for paving and construction are named and described in the ordinance. The utilities tax is pledged for a period of approximately twenty years to pay the paving certificates. The buyers of the certificates are on notice that payment cannot be had or expected from any other source. The certificates as validated do not directly, or indirectly, obligate the City of Pensacola to levy or collect an ad valorem tax on real estate within the city, neither is the taxing power of the city pledged for their payment. The only obligation resting on the city is to impose the utilities tax during the life of the certificates and apply same to their payment. The certificates are not liens against the property of the city, neither can they be made a charge of any kind against the property of the taxpayers of the City of Pensacola or on the taxing resources thereof and the certificates are not municipal bonds within the meaning of Section 6 of Article 9 of the Constitution of Florida, but are designated "certificates". See State v. City of Miami, supra, and similar cases.
Appellants' questions two and three may be considered under a single assignment, and are viz.:
Question number two: Does the City of Pensacola have the power and authority to enter into an irrevocable contract for the levy and collection of the utilities services taxes during the life of the paving certificates, notwithstanding that the charter of the city and other applicable provisions of law under which said utilities services taxes are levied and collected, may hereafter be repealed, modified or amended, and to contract to raise the rates of such utilities services taxes?
Question number three: Does the charter of the city and other applicable provisions of law under which the said utilities *Page 573 
services taxes are levied and collected, without express authorization to pledge utilities services taxes for obligations, become a part of the contract with certificate holders of the subject issue, not subject to repeal or modification by the Legislature of the State of Florida?
The questions supra challenge the power and authority of the City of Pensacola to enter into an irrevocable contract in the form of an ordinance to levy excise taxes on designated utilities for a period of twenty years, or during the life of the paving certificates. The court below held that the City of Pensacola possessed these powers in language viz.:
"Thirteenth: That said City had power to validly covenant, and has validity covenanted in said Ordinance No. 7-49, as amended by said Ordinance No. 14-49, to irrevocably continue the levy and collection of said utilities services taxes as long as any of said Paving Certificates, or the interest thereon, are outstanding and unpaid, notwithstanding that prior thereto, the Charter of said City or other applicable provision of law under which said utilities services taxes are levied and collected may be repealed, amended or modified by the Legislature of the State of Florida.
"Fourteenth: The pledge of said utilities services taxes for said Paving Certificates in said Ordinance No. 7-49, as amended by said Ordinance No. 14-49, is and constitutes an irrevocable contract between the City and the holders of said Paving Certificates, which contract cannot hereafter be impaired, or modified in any manner, by the Legislature of the State of Florida, and said City will have power and be obligated to continue the levy and collection of said utilities services taxes as provided in said Ordinance No. 7-49, as amended by said Ordinance No. 14-49, as long as any of said $1,700,000 Paving Certificates are outstanding and unpaid, notwithstanding that said Charter of said City or other applicable provision of law under which said utilities services taxes are levied and collected may prior thereto be repealed, amended or modified by the Legislature of the State of Florida.
"Fifteenth: That said City had power to validly covenant, and has convenanted in said Ordinance No. 7-49, as amended by Ordinance No. 14-49, to increase said utilities services taxes rates whenever necessary for payment of debt service on said $1,700,000 Paving Certificates and as long as any of said Paving Certificates, or the interest thereon, are outstanding and unpaid, and notwithstanding that prior thereto the Charter of said City or other applicable provisions of law under which said utilities services taxes are levied and collected may be repealed, amended or modified by the Legislature of the State of Florida.
"Sixteenth: That the covenant of said City to increase the rates of said utilities services taxes whenever necessary for payment of debt service on said Paving Certificates is and constitutes a valid and binding contract between the City and the holders of said Paving Certificates, which contract cannot hereafter be impaired or modified in any manner by the Legislature of the State of Florida, and said City will have power and be obligated to increase the rates of said utilities services taxes whenever necessary for the payment of debt service on said $1,700,000 Paving Certificates, as long as any of said Paving Certificates, or interest thereon, are outstanding and unpaid, notwithstanding that the Charter of said City or other applicable provisions of law under which said utilities services taxes are levied and collected may be repealed, amended or modified by the Legislature of the State of Florida.
"Seventeenth: That said City had power to irrevocable pledge said utilities services taxes to the payment of the principal of and interest on said Paving Certificates, and to irrevocably pledge to increase the rates of said utilities services taxes, notwithstanding that the levy and collection of such utilities services taxes, and the pledge thereof, is not specifically authorized by the Charter of said City or by any special or general act of the Legislature of the State of Florida."
The power of the City of Pensacola to levy a tax upon the purchase of gas, electricity, water and telephone service payable by the consumer was sustained in Heriot v. City of Pensacola, supra. Section 5 of Article 9 of the Constitution of Florida provides that the Legislature shall authorize *Page 574 
the several counties, cities and towns of Florida to assess and impose taxes for county and municipal purposes and all property shall be taxed upon the principles established for State taxation. In Amos v. Mathews, 99 Fla. 1, 65, 126 So. 308, we held that the Legislature could provide for levying excise taxes, or it could delegate the authority so to do to local officials. Section 8 of Article 8 of the Constitution of Florida grants the Legislature power to establish and abolish municipalities and to prescribe their power and jurisdiction.
It is next contended that the City of Pensacola has the power to repeal or rescind the ordinance enacted in October 8, 1946, levying the utilities services taxes and, likewise, the Legislature possesses the power to repeal Chapter 15425, Special Acts of 1931, and Chapter 22829, Laws of Florida, Acts of 1945, F.S.A. § 167.43 — 1, under which the above utilities taxes were levied. The answer to these contentions is that the law in force at the time the contract is made forms a part of the contract, and when a county issues its bonds under a statute providing for the payment of the bonds, and which authorizes the levy of an annual tax to service the same, the Legislature is without power to repeal the statute, as it impairs the obligation of a contract. County Commissioners of Columbia County v. King,13 Fla. 451, Article 1 of Section 10 of the United States Constitution provides that "No State shall * * * pass any bill of attainder, ex post facto Law, or Law impairing the Obligation of contracts * * *." See Tapers v. Pichard, 124 Fla. 549,169 So. 39; Schmeller v. City of Fort Lauderdale, Fla., 38 So.2d 36.
Counsel for appellant contends that the case at bar should be reversed on authority of Boykin v. Town of River Junction,121 Fla. 902, 164 So. 558, and Kathleen Citrus Land Co. v. City of Lakeland, 124 Fla. 659, 169 So. 356. It is a sufficient answer to say that this Court in its opinion in the Lakeland case, supra, pointed out the distinction between it and State v. City of Miami, 113 Fla. 280, 152 So. 6; State v. City of Lake City,116 Fla. 10, 156 So. 924, and State v. City of Daytona Beach,118 Fla. 29, 158 So. 300. The record discloses other questions posed for adjudication, but what has been said herein disposes of the merits of this controversy.
We fail to find error in the record.
Affirmed.
ADAMS, C.J., and SEBRING and HOBSON, JJ., concur.