The State of Florida has appealed from a final decree validating an issue of $2,500,000 "Special Obligation Paving Bonds" of the City of Daytona Beach proposed to be issued pursuant to the provisions of Ordinance No. 49-118 enacted by the City, which authorizes the City to pledge for the retirement of the bonds all moneys received from a tax on the purchase of electricity, metered and bottled gas and local telephone and telegraph service, and certain revenues received by the City from the operation of its parking meters; and which authorizes the City to covenant that in the event the funds derived annually from the two *Page 765 
sources are not sufficient to meet bond service requirements, the City will levy and impose a tax on the purchase of water within the corporate limits of the City, and apply the necessary revenues from this source to meet such deficit.
In the decree appealed from the trial court, after a full hearing on the petition, answer of the State Attorney and evidence on the merits, found and decreed, among other things, (1) that the allegations of the petition had been fully sustained by competent evidence, (2) that City Ordinance No. 49-118 had been duly enacted and was sufficient in substance to authorize the issuance of the bonds in the manner and form provided, to authorize the City to pledge to and charge with the payment of the principal and interest on said bonds the "Utilities Service Tax" referred to in the ordinance and the revenues received by the City from the parking meters owned and operated by the City, and to authorize the City to covenant that it would levy and impose a tax on the purchase of water within the corporate limits of the City if the same should be needed in order to make the required deposits to the credit of the special sinking fund created for the payment of the principal and interest on the bonds; (3) that the bonds, when issued, would not constitute a debt of the City or a pledge of the faith and credit of the City but would be payable solely from the said special fund made up of special revenues provided by the Ordinance, and that the City would not be obligated to pay the bonds except from such special fund; and (4) that the provisions of the ordinance, that the bonds should be sold by the City Commission of the City in such manner and for such price as should be determined by the City Commission by resolution was a valid and lawful provision and was fully authorized by the Charter of the City and by chapter 25771, Special Laws 1949, and that the City might lawfully sell said bonds at private sale and without advertisement for bids.
On the appeal the State contends that the decree was erroneous and should be reversed for the reasons (1) that the issuance of the bonds without the approval of a majority of the votes cast at an election in which a majority of the freeholders who are qualified electors residing in the City of Daytona Beach have participated will be violative of section 6, Article IX of the Florida Constitution, F.S.A.; and (2) that the provisions of Ordinance No. 49-118 which permits the bonds to be sold by the City at private sale is invalid, because there is no basic statutory authority permitting the sale of bonds by the City of Daytona Beach at private sale.
We shall consider these contentions in the order in which they were argued at the bar of this court.
Under its charter the City of Daytona Beach has the fundamental power to open, establish, vacate, alter, extend, widen, grade and pave its streets and other public ways. See Section 15, Chapter 19768, Special Laws of Florida 1939, as amended and supplemented. By Chapter 25771, Special Laws of Florida 1949, the City is authorized and empowered to pledge to the payment of the principal and interest of any revenue bonds for paving its streets and ways (but limited to an amount to be determined by the result of a survey by nationally recognized engineers not to exceed the sum of $2,500,000) all or any part of the proceeds of any utilities service tax imposed or levied by the City under the provisions of Chapter 22829, General Laws of Florida 1945, as amended by Chapter 24337, General Laws of Florida 1947, F.S.A. § 167.43 — 1; the pledge of the proceeds to be irrepealable until the paving bonds secured by the pledge, both principal and interest, have been paid or until "provision for payment shall have been made."
According to the evidence and the findings of the final decree, the City Commission of the City of Daytona Beach "has caused a survey to be made by nationally recognized engineers, who have submitted their report setting forth their recommendations as to the streets to be paved and estimates of costs, such estimates exceeding in the aggregate the sum of $2,500,000, and listing the streets the paving of which should have priority if funds cannot be made available for the work recommended * * * Because of the deteriorated condition *Page 766 
of the streets mentioned above, the cost of maintaining and repairing the streets in recent years has been excessive, averaging approximately $88,000 annually in the last three years, which cost will be largely obviated by the paving to be financed by the issuance of the special obligation bonds of the City * * * The City Commission has estimated the amount of the annual revenues which are pledged under the provisions of Ordinance No. 49-118 * * * and it appears from such estimate that such annual revenues will exceed the amounts required for paying the interest and the principal of said obligation bonds as the same become due and payable."
From the statutes referred to and the findings in the decree from which the appeal is taken, it is apparent that the proper predicate exists for the issuance of bonds for paving purposes. In Schmeller v. City of Ft. Lauderdale, Fla., 38 So.2d 36, the right of a municipality to pledge revenues derived from its public utilities as additional security to service recreational bonds was recognized, under a statute granting such authority; and in State v. City of Pensacola, Fla., 40 So.2d 569, the right of a municipality to pledge a tax on public utilities for the payment of certificates issued to finance paving construction was also approved. Upon authority of these cases, the right of the City to pledge its utility taxes to service the bonds seems clear.
The right of a municipality to employ parking meters in the regulation of traffic on its streets has been upheld in State ex rel. Harkow v. McCarthy, 126 Fla. 433, 171 So. 314, and — aside from the question of whether a municipality may collect from the public using its parking meters an amount in excess of that reasonably necessary to defray the costs attendant upon the exercise of the police power involved, a question we do not determine on this appeal — there would seem to be no real question of the right of the City to pledge to the payment of the bond issue the excess revenues derived from such facility. Parenthetically, it may be stated in connection with the question of the right of the City to pledge its parking meter revenues, that Ordinance No. 48-118, which authorizes the issuance of the bonds under consideration, contains no covenant as to the obligation of the City to maintain its parking meters throughout the life of the bonds but only provides for the deposit to the credit of the sinking fund set up to retire the bonds of such a sufficient amount of the parking meter revenues received by the City as shall be necessary to make up any deficiency in utilities service tax proceeds to service the bonds, in the event the utilities service tax proceeds do not prove adequate to meet bond service requirements.
It is plain that the proposed special obligation bonds of the City of Daytona Beach are to be issued for a municipal purpose. The ordinance under which the bonds are to be issued provides that the bonds "shall not be deemed to constitute a debt of the City or a pledge of the faith and credit of the City, but shall be payable solely from the special fund provided therefor from revenues and the City is not obligated to pay this bond except from such special fund." The moneys to be placed in the special fund are to be derived from revenues which are excise in nature, and the buyers of the obligation will be on notice that payment cannot be had or expected from any other source of revenue. The bonds will not be liens against the property of the City nor can they be made a charge of any kind against the property of taxpayers within the City. The only obligation resting upon the City will be to impose the utilities service tax during the life of the bonds and apply a sufficient amount of the proceeds to their payment, and, in the event the utilities tax proceeds do not maintain the special fund at a level sufficient to meet bond requirements annually, to apply sufficient revenues received from the operation of parking meters to make up the deficit.
Under these circumstances it is our view that the Special Obligation paving Bonds proposed to be issued are not bonds of the City of Daytona Beach, within the purview of Section 6 of Article IX of the Constitution, F.S.A., and hence that a freeholders' vote is not necessary as a condition precedent to their issuance. Compare *Page 767 
Schmeller v. City of Ft. Lauderdale, Fla., 38 So.2d 36; State v. City of Pensacola, Fla., 40 So.2d 569.
The final contention of the appellant is with respect to whether a provision of Ordinance No. 49-118 is invalid which authorizes the bonds involved to be sold by the City Commission "in such manner and for such price as shall hereafter be determined by the City Commission by resolution." It is argued by the appellant that under this provision the City Commission is authorized to sell its bonds at private sale, without express statutory authority, and that because of an absence of such statutory authority, the bonds must be sold at public sale. We find no merit in this contention.
In Section 22 of the Charter, which relates to improvements by special assessment, it is provided that all bonds issued under that section for improvements, where special assessments are made on the abutting property, "shall be sold in the same manner as other bonds of the City." In section 122 of the charter relating to the sale of general bonds, it is provided that "The City Commission shall offer said bonds for sale by notice stating the amount of bonds for sale, rate of interest, and when due and payable by advertising once a week for three weeks in a newspaper published in Volusia County. The City Commission shall receive bids for the purchase of said bonds or any part thereof on the day fixed by such notice * * * They shall have the right to reject any and all bids and re-advertise the bonds or any portion of the same remaining unsold. Provided, however, that if no satisfactory bids are received pursuant to any advertisement of sale hereunder the City Commissioners may in their discretion without such re-advertisement sell such bonds at any time within sixty days thereafter at a price of not less than the highest bid received at the advertised sale, but not less than 95% of their par value."
These are the only provisions in the charter governing the sale of bonds by the City of Daytona Beach, and, inasmuch as the bonds which have been validated are special obligation bonds payable solely from special excise revenues, and are not general obligation bonds or special assessment bonds of the City, the provisions of the Charter mentioned have no application. The statute under which the bonds are to be issued, Chapter 25771, Special Laws, 1949, is silent as to the method of disposal of the bonds. Therefore, so far as statute law is concerned, there is no provision of statutory law regulating the method of disposition.
In at least two instances, it has been held by the courts of other jurisdictions that in the absence of a statute providing for public sale, the issuing authority may adopt such method of sale as in their judgment in the exercise of a sound discretion will be for the best interest of the municipality. See Thomas v. McHugh, 65 N.D. 149, 256 N.W. 763; Vollmer v. Village of Amherst,65 Ohio App. 26, 29 N.E.2d 379. It is our considered view that the principle enunciated in the cited cases should be recognized and applied to the bond issue involved in this appeal.
Under the general power conferred by the Charter of the City of Daytona Beach the City Commission is allowed a broad discretion with respect to the establishment of public streets and highways; and it is also empowered to make such ordinances "not inconsistent with the laws of the State of Florida as shall be deemed expedient for the good government of the city, the public safety and welfare * * * the benefit of trade and commerce * * * and for the exercise of its corporate powers and the performance of its corporate duties." See sections 15 and 21, chapter 19768, Special Laws of Florida 1939, as amended and supplemented. In the absence of a statute providing otherwise, we think that the questioned provision of Ordinance No. 49-118 is valid and must govern the manner of placing or disposing of the bonds, and that the City Commission may adopt such method of disposing of the bonds as in its studied discretion will be for the best interests of the City. *Page 768 
The decree appealed from should be affirmed.
It is so ordered.
ADAMS, C.J., and CHAPMAN and HOBSON, JJ., concur.