53 So.2d 306 (1951)
STATE et al.
v.
CITY OF JACKSONVILLE.
Supreme Court of Florida, en Banc.
June 26, 1951.
William A. Hallowes, III, Jacksonville, for appellants.
William M. Madison, Jacksonville, for appellee.
TERRELL, Justice.
The extraordinary session of the legislature, 1949, enacted Chapter 26439, Laws of Florida, authorizing the City of Jacksonville to acquire real estate for the extension of its recreational facilities. The act also required the City to place $100,000 annually for four years in its Recreational Facilities Fund, said amounts to be set up in the city's annual budget. The act then authorized the city to issue certificates of *307 indebtedness in the sum of $400,000 against its recreational facilities fund to pay for said real estate The City of Jacksonville then enacted Ordinance BB-508 directing the city to acquire lands for baseball parks, sports arena, play grounds and off-street parking by purchase, condemnation or otherwise, to issue Recreational Facilities Fund Certificates, hereinafter referred to as certificates, payable solely from said Recreational Facilities Fund. The ordinance also covenanted to appropriate $100,000 annually for four years to the city budget from revenues not already pledged other than ad valorem and cigarette taxes to retire said certificates.
This suit was instituted by petition to validate said certificates. It detailed the foregoing facts, gave the required notice, recited that the city's net unpledged utility taxes are in excess of $1,000,000 annually, that the net unpledged revenues of its municipal electric system are in excess of $3,000,000 annually and concludes with the recitation that said certificates are payable solely from said Recreational Facilities Fund and none other and will not constitute a lien on any physical property or other funds of the city and will not directly, indirectly or contingently obligate the city to levy or pledge any form of ad valorem taxation whatever.
The State alone answered the petition and challenged the validity of the certificates on the following grounds: (1) Chapter 26439, Acts of 1949, is invalid and unconstitutional because the acquisition of lands for recreation facilities is not a municipal purpose. (2) The certificates are in effect bonds which, under Section 6, Article IX of the Constitution, F.S.A., require an approving vote of the freeholders. (3) Ordinance BB-508 is void for the same reasons that Chapter 26439 is void and unenforceable. (4) The certificates are not binding on the city because they are not payable with income from the recreational facilities, they are not for a current governmental need and are not secured by a pledge of any specific excise tax.
On the issues so made the chancellor found that Chapter 26439 recognized the need for recreational facilities, that the city had made the necessary appropriation in its budget to retire them, that it had enacted Ordinance BB-508, authorizing said certificates and that the net revenues of the city not already pledged other than ad valorem and cigarette taxes were greatly in excess of the amounts required to be appropriated for the recreational facilities fund and ample to retire the certificates as they mature, that Chapter 26439 and Ordinance BB-508 were both valid and that the certificates were legal and binding obligations of the city. This appeal is from the final decree.
The first question urged is whether or not the acquisition of lands for recreational facilities such as baseball parks, sports arenas, play grounds and off-street parking is a proper and valid municipal purpose.
There no doubt was a time when the courts of this country would have stricken down a legislative act authorizing an appropriation of public funds for recreational facilities. It might also be pointed out that coeval with this time the three "r's" were the major part of the public school program, that we drank branch water not knowing it was contaminated with germs and that we constructed our school houses without any regard to lighting, sanitation and many other requirements that we now consider essential. Athletic sports have long been required as part of the public school and community program and they are being provided everywhere. In some institutions of higher learning credit for degree is given in sports. What the city is proposing here is in harmony with municipal and community programs in every progressive locality and are generally approved.
In addition to the foregoing but no doubt actuated by said observations, State and City legislatures have found that recreational facilities are proper subjects for the expenditure of public funds. It is a proper exercise of legislative power and so long as reasonable and in the range of legislative ambit this court is without power to strike it down. Courts should bear in mind that they have no will or design of their own to serve in matters of this kind. All the will the courts have is *308 to activate the law as expressed in legislative fiat, freed from personal, political or economic bias. It is their duty to effectuate the will of the legislature so long as it is shown to be just and reasonable and within the power vouchsafed to it. We think the legislature was authorized to empower the city to provide recreational facilities and appropriate funds in the manner pointed out to pay for them.
The only other question necessary to discuss is whether or not the certificates are bonds that require an approving vote of the freeholders as contemplated by Section 6, Article IX of the Constitution.
Appellants contend that this question requires an affirmative answer because (1) the certificates are not payable from revenues of the recreational facilities, (2) the certificates do not provide for a current governmental necessity, and (3) the certificates are not payable from the pledge of a designated excise tax. Bessemer Properties v. City of Miami, Fla., 41 So.2d 551, is relied on to support this contention.
Whether recreational facilities are a current governmental necessity does not require decision in this case; indeed it is not contended that they are. The chancellor found that, based on past experience, revenues of the city other than ad valorem and cigarette taxes were greatly in excess of the sums the city is required to allocate to its budget during the years 1952, 1953 and 1954 to meet the needs of its Recreational Facilities Fund and that such moneys will be ample to retire principal and interest of said certificates as they mature. The chancellor also found that the city had funds unpledged aggregating $3,000,000 other than ad valorem and cigarette taxes to meet the requirement of its Recreational Facilities Fund. Such were the facts on which he found that said certificates will not directly, indirectly or otherwise, obligate the city to pledge any form of ad valorem taxation for their payment. The chancellor also held that the city was powerless to levy or pledge any form of ad valorem taxation whatever to pay principal or interest on said certificates.
Section 6, Article IX of the Constitution was designed to protect the home and real estate owner from unreasonable taxes. Prior to the time of the adoption of this amendment, real estate was the main source of taxation, but that source has been so broadened that at the present time excise taxes bear a much larger part of the tax burden than formerly. We have repeatedly held that when certificates of indebtedness are for an authorized public purpose and are payable solely from revenues derived from utilities service, excise taxes, licenses or some other source than ad valorem taxes, they may be issued without an approving vote of the freeholders as required by Section 6, Article IX of the Constitution. Schmeller v. City of Ft. Lauderdale, Fla., 38 So.2d 36; State v. City of Pensacola, Fla., 40 So.2d 569; State v. City of Lakeland, Fla., 42 So.2d 580; State v. City of Daytona Beach, Fla., 42 So.2d 764; State v. City of Pensacola, Fla., 43 So.2d 340; State v. City of Pompano, Fla., 47 So.2d 515; State v. City of Bartow, Fla., 48 So.2d 747.
The certificates themselves provide that they may not be paid from ad valorem taxes. It is true that no specific excise tax is earmarked to pay them, but with all the prohibitions in the statute, the ordinance and the certificate contract to prohibit their payments from ad valorem taxes, the purchaser is certainly on notice that he is limited in his security to unpledged revenues of the city other than ad valorem and cigarette taxes and the city is on notice that it would be estopped to liquidate them from any other source. Section 6, Article IX of the Constitution requires no other limitation.
It is therefore our view that Chapter 26439, Acts of 1949, and Ordinance BB-508, conferred on the City of Jacksonville ample power to acquire the land and construct the recreational facilities in accordance with its best business judgment, that the chancellor correctly found that the certificates of indebtedness imposed no obligation whatever on the ad valorem taxing power of the city and that they do not require an approving vote of the freeholders as contemplated by Section 6, Article IX of the Constitution. The validity of the certificates is so obvious that it is not necessary *309 to balance between theories of validity and invalidity.
The decree appealed from is therefore affirmed.
Affirmed.
SEBRING, C.J., CHAPMAN, HOBSON and ROBERTS, JJ., concur.
THOMAS and ADAMS, JJ., dissent.