## TOWN OF NORTH MIAMI v. STATE, et al.

Circuit Court, Dade County.
September 7, 1951.

Frank E. Solomon, Miami, for petitioner.

Arthur A. Carlson, Assistant State Attorney, Miami, for the State.

Leonard L. Kimball, Miami, for defendant taxpayers.

George F. Meister, Smathers, Thompson, Maxwell & Dyer, Miami, for defendant taxpayer.

VINCENT C. GIBLIN, Circuit Judge.

The Town of North Miami is not chartered by any special or local law but exists and functions under general laws providing for the incorporation, government, jurisdiction, powers, duties and privileges of cities and towns. Its council, by resolution adopted on July 19, 1951, has authorized the issuance and sale of public improvement revenue certificates, in an aggregate principal amount not to exceed $800,000, for the purpose of realizing funds for the construction of new streets and for the improvement, widening and extension of existing streets. As is shown by the resolution, the indebtednesses to be evidenced by the certificates, when and if they shall be issued and sold, are to be paid, both as to principal and interest, solely from revenue to be derived from the levy and collection of taxes imposed by the town on the purchases of electricity, metered or bottled gas (natural, liquified petroleum gas or manufactures) and telephone service; and such revenue is to be pledged to secure the payment of such indebtednesses.

The town has petitioned this court for a determination of its authority to issue and sell such certificates of indebtedness and for a determination of the legality of all proceedings in connection with the proposed issuance and sale of such certificates.

The state attorney and certain taxpayers, property owners and citizens of the town have answered the petition and oppose the entry of the validation decree sought by the town.

The first contention advanced by the objectors is that the issuance and sale of the certificates, without the approval "by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in [the town] shall participate," would be violative of the provisions of section 6 of article IX of the state constitution.

That there is no constitutional impediment to the issuance and sale of such certificates, without an approving vote of the freeholders, has been held by our Supreme Court in State v. City of Winter Park, 34 So. 2d 740; Schmeller v. City of Fort Lauderdale, 38 So. 2d 36; State v. City of Lakeland, 42 So. 2d 580; State v. City of Daytona Beach, 42 So. 2d 764; State v. City of Pensacola, 43 So. 2d 340; State v. City of Bartow, 48 So. 2d 747; and State v. City of Jacksonville, 53 So. 2d 306.

In the last of the cited cases (decided June 26, 1951) the Supreme Court said: "Section 6, Article IX of the Constitution was designed to protect the home and real estate owner from unreasonable taxes. Prior to the time of the adoption of this amendment, real estate was the main source of taxation, but that source has been so broadened that at the present time excise taxes bear a much larger part of the tax burden than formerly. We have repeatedly held that when certificates of indebtedness are for an authorized public purpose and are payable solely from revenues derived from utilities service, excise taxes, licenses or some other source than ad valorem taxes, they may be issued without an approving vote of the freeholders as required by Section 6, Article IX of the Constitution. Schmeller v. City of Ft. Lauderdale, 38 So. 2d 36; State v. City of Pensacola, 40 So. 2d 569; State v. City of Lakeland, 42 So. 2d 580; State v. City of Daytona Beach, 42 So. 2d 764; State v. City of Pensacola, 43 So. 2d 340; State v. City of Pompano, 47 So. 2d 515; State v. City of Bartow, 48 So. 2d 747."

A second contention is that the legislature has not delegated to the town the authority to incur the proposed indebtedness and to pledge revenue to be derived from the levy and collection of utilities service taxes to secure the payment of such indebtedness. The question presented by this contention is determinable by reference to the general laws under which the town exists and functions.

By section 169.01 of the Florida Statutes the town is given the right to "borrow money or contract loans for the use of the . . . town, whether from bodies corporate or from individuals residing in or out of the state," and to "pledge the funds, credit and property of the corporation for the redemption of such loan or loans."

As will be noted, no limitation or restriction is imposed as to the source of the funds which may be pledged; and I am impelled to the conclusion that the stated second contention is untenable.

A third objection to the validation sought is that at the time of the adoption of the resolution by which the issuance and sale of the certificates was authorized no plans and specifications for the construction of new streets and for the improvement, widening and extension of existing streets were on file with the town clerk.

It is only when, under sections 170.01 et seq. of the Florida Statutes, the town seeks to levy and collect special assessments on abutting, adjoining, contiguous or other specially benefited property for the purpose of providing funds for the payment of all or a part of the cost of street improvements—only then is it required (by section 170.04) that "plans and specifications with the estimated cost of the proposed improvement" be on file with the town clerk and "open to the inspection of the public." This requirement is obviously for the protection of the owners of the property on which assessments are to be levied. It is not proposed here to levy any such special assessments; and it is clear, therefore, that section 170.04 is not applicable.

Related to the objection that no plans and specifications and no cost estimate are on file and subject to public inspection is the fourth contention that a validation decree would, in effect, give the town council *carte blanche* in the expenditure of public funds which may be as much as $800,000.

This contention is evidently based on the objectors' distrust of the incumbent councilmen. This court, however, when councilmen are authorized to exercise a particular municipal function, cannot preclude its exercise where no applicable rule of law is violated and the authority given is not exceeded or abused, merely because some of the taxpayers, property owners and citizens lack confidence in their elected officials. Their remedy is political and not judicial. This does not mean that illegal or wrongful use of the funds to be realized from the issuance and sale of the certificates in question may not be enjoined; but the court cannot anticipate or presume that such illegal or wrongful use will be made of the funds.

The fifth and last contention of the objectors to be considered is that the mayor of the town vetoed the resolution by which the issuance and sale of the certificates were authorized and that it was not readopted over such veto by a two-thirds vote of the councilmen.

The pertinent provisions of section 165.11 of the Florida Statutes are that "all ordinances passed by the city council shall be submitted before going into effect, to the mayor or person acting as such, for his approval"; that "if approved he shall sign the same, when it shall become a law"; that "*if disapproved, he shall return the same with his objections in writing to the city council, at their next regular meeting,* who shall . . . proceed to consider the mayor's objections, and to act upon the same."

It was shown by the testimony that the resolution was passed (on first reading) on July 3, 1951, at a regular meeting of the council which had been adjourned from June 26th; that the resolution was submitted to the mayor on July 5th; that the next regular meeting convened on July 10th, but, because of the press of other business the resolution was not considered on that date; that, however, the regular meeting begun on July 10th was recessed until July 19th, at which time the mayor was present and at which time the resolution was finally adopted; that the next regular meeting of the council was held on July 24th; and that no objections were made by the mayor until July 25th when he addressed to the council a letter (dated July 27th) in which he stated his reasons for not having signed the resolution.

Assuming that section 165.11 is applicable to resolutions, as well as ordinances, it is my view that, if the mayor desired to disapprove the resolution, he should have submitted his objections at the council meeting of July 10th, which was the next regular meeting following the submission of the resolution to him on July 5th. Certainly, after the final adoption of the resolution on July 19th at a meeting which he attended, he should not have waited until after the next regular meeting held on July 24th to submit his objections. I hold, therefore, that there was no effective veto of the resolution which required further consideration and action by the council.

I have carefully considered the pleadings, the testimony and proofs submitted and the briefs and arguments of counsel; and am of the opinion that the validation decree sought should be entered.

It is accordingly determined and decreed (a) that the petitioner, the Town of North Miami, had and has the authority to issue and sell the public improvement revenue certificates the issuance of which was and is authorized in and by that certain resolution numbered 1827 which was adopted by the town council of such municipality on July 19, 1951, and a copy of which was introduced in evidence (at the final hearing of the cause) as the petitioner's exhibit numbered 5; (b) that the mentioned resolution was duly and legally adopted by the town council of the petitioning municipality and has been, since such adoption, and is now, in full force and effect; (c) that all proceedings in connection with the adoption of such resolution and the proposed issuance and sale of the mentioned public

improvement revenue certificates have been, and are, legal and valid; and (d) that such certificates, or so many of them as shall be issued and sold, when so issued and sold pursuant to, and in compliance with, the terms, provisions and conditions of the mentioned resolution, shall become and be legal, binding, effective and enforceable contracts in and by which the petitioner, the Town of North Miami, shall be legally bound and obligated to the bearers of such certificates so issued and sold to pay and discharge the indebtedness evidenced by such certificates so issued and sold at the times, in the manner and out of and from, and only out of and from, the revenues mentioned and designated in and by such certificates. The State's motion to dismiss the petition is denied.