152 So.2d 466 (1963)
Betty A. KLEIN et al., Appellants,
v.
CITY OF NEW SMYRNA BEACH, Florida, a municipal corporation, et al., Appellees.
No. 32354.
Supreme Court of Florida.
April 24, 1963.
Rehearing Denied May 14, 1963.
*467 Nicholas S. Masters, Daytona Beach, for appellants.
Frank L. Watson, Freeman, Richardson & Watson, Jacksonville, and Fred R. Brannon, Jr., New Smyrna Beach, for appellee.
TERRELL, Justice.
This appeal is from a final decree validating an issue of sewer revenue certificates to be dated January 1, 1963, maturing serially January 1, 1967, in varying amounts through 2003, both inclusive. Said revenue certificates are payable solely from the "net revenues derived from the operation of the sewer system, the cigarette tax levied pursuant to § 210.03, Florida Statutes, [F.S.A.] and from special assessments levied against the properties to be specifically benefitted by the construction of the proposed sewer improvements."
When the petition to validate was filed, order to show cause why the revenue certificates should not be validated was published as required by law. Appellants being residents, property owners and taxpayers in the City of New Smyrna Beach, intervened for themselves and all others similarly situated. The intervenors moved to dismiss the petition to validate for various reasons not necessary to recite. The motion to dismiss was denied, answer was filed, evidence was taken, arguments and briefs were considered, after which the court entered final decree validating the revenue certificates. This appeal is from the final decree of validation.
The first question presented is whether the "revenue certificates" proposed to be issued are in fact "bonds" or "certificates."
As a general rule, we have said that if proposed certificates are secured by a pledge of ad valorem taxes, they are "bonds" and must be approved by the freeholders as required by Section 6, Article IX of the Florida Constitution, F.S.A. but if they are secured by excise taxes, special assessments or charges against the facility constructed with the net proceeds thereof, they are certificates that do not have to be approved by the freeholders.
In State v. Key West, 153 Fla. 226, 14 So.2d 707, we said, "Whether the bonds so issued are designed as revenue bonds or revenue certificates is not material. Their import will be controlled by their legal effect rather than by the name given them in the ordinance."
Ordinance 657, under which the certificates in question were issued, contains the following provision:
"The principal of and interest on the Certificates to be issued pursuant to this Ordinance and all of the reserve, sinking fund or other payments provided for will be paid solely from the net *468 revenues derived from the operation of the system, the proceeds of the cigarette tax and from the proceeds of special assessments levied against all property specially benefited by the construction of the project herein authorized. The City will not be authorized to levy taxes on any real property therein to pay the principal of and interest on the Certificates herein authorized or to make any of the reserve, sinking fund or other payments provided for herein. The Certificates issued pursuant to this Ordinance shall not constitute a lien upon the system or upon any property whatsoever of or in the City of New Smyrna Beach, Florida."
The text of the revenue certificates pertinent to this question is as follows:
"This Certificate and the coupons appertaining thereto are payable solely from and secured by a prior lien upon and pledge of the net revenues derived from the operation of the system; by a prior lien upon and a pledge of the proceeds of special assessments levied against all property specially benefited by the construction of the improvements authorized by the Ordinance; and, to the extent necessary, from the proceeds derived by the City upon each and every sale, receipt and purchase of cigarettes within the corporate limits of the City under the authority of Section 210.03, Florida Statutes, and as imposed by Ordinance enacted by the City on ____, 19__. This Certificate does not constitute an indebtedness by the City within the meaning of any constitutional, statutory or charter provision or limitation, and it is expressly agreed by the holder of this Certificate that such holder shall never have the right to require or compel the exercise of the taxing power of said City for the payment of the principal of and interest on this Certificate or the making of any sinking fund, reserve or other payments provided for in the Ordinance authorizing this issue of Certificates. This Certificate and the obligation evidenced thereby shall not constitute a lien upon the City's system or any part thereof, or on any other property of the City of New Smyrna Beach, but shall constitute a lien only upon the net revenues derived from the operation of the system; the proceeds of such special assessments; and the proceeds of the Cigarette Tax, all in the manner provided in the Ordinance."
Section 184.08(1), Florida Statutes, F.S.A. authorizing the issue of sewer revenue bonds is of similar import to the provisions of the city ordinance last quoted in that it "shall not be deemed to constitute a pledge of the faith and credit of the municipality, but such bonds shall be payable solely from the funds provided therefor under the provisions of this chapter." We think these provisions conclude the point.
The second question presented is whether or not the City of New Smyrna Beach is authorized to pledge its cigarette taxes to secure the revenue certificates in question.
To answer this question, the city relies on Section 184.21, Florida Statutes, F.S.A. the pertinent part of which is as follows:
"Any municipality may pledge the proceeds of utilities services taxes, cigarette taxes, or franchise taxes, as defined herein, or any other excise taxes or other funds which such municipality is authorized to levy and collect or will have available, as additional security for the payment of the principal of and interest on any revenue bonds or general obligation bonds issued hereunder, or for reserves for such debt service."
Similar questions were before the court in State v. De Funiak Springs, Fla. 1956, 91 So.2d 169; State v. West Panama City Beach, Fla. 1961, 127 So.2d 665, and Panama City v. State, Fla. 1957, 93 So.2d 608, and others, wherein a similar question was answered *469 contrary to the contention of appellants.
The third question presented may be stated as follows: May an issue of revenue certificates dated January 1, 1963, and maturing serially in varying amounts to and including January 1, 2003, violate the 40-year limitation of § 184.06(1), Florida Statutes F.S.A.?
Section 184.06(1), Florida Statutes, F.S.A. provides in part:
"The bonds of each issue shall be dated, shall bear interest at such rate or rates not exceeding six per cent per annum, shall mature at such time or times, not exceeding forty (40) years from their date or dates, * * *."
Said section also provides:
"All bonds issued under the provisions of this chapter shall have and are hereby declared to have all the qualities and incidents of negotiable instruments under the negotiable instruments laws of the state."
Section 675.03, Florida Statutes, F.S.A. being a section under the negotiable instruments law, provides in part:
"Where the instrument is payable at a fixed period after date, * * * the time of payment is determined by excluding the day from which the time is to begin to run, and by including the date of payment."
Applying this formula, the time for computing the period of forty years for the present issue of revenue certificates commences to run January 2, 1963, and ends January 1, 2003, and therefore meets the requirements of Chapter 184. Section 184.06(1), Florida Statutes, F.S.A. provides that the bonds shall mature not exceeding forty years from their date. It does not say "within forty years" or including their date. The general rule in this state is that where time is to be computed from a particular day or when an act is to be performed within a specified time from or after a named date, the first day is excluded and the last day is included. Scarlett v. Frederick, 147 Fla. 407, 3 So.2d 165; State v. Florida State Turnpike Authority, Fla. 1961, 134 So.2d 12, and other cases which we think conclude the point against the contention of appellants.
The next question presented is whether an ordinance of New Smyrna Beach published only one time which relates to the issuance of bonds is legally sufficient.
Appellants contend that Ordinance 657 authorizing the revenue certificates was published only once which is correct. The contention is that said ordinance should have been published as required by § 165.20, Florida Statutes, F.S.A. It appears that § 165.20, Florida Statutes, F.S.A. applies to municipalities created under the general law, while the City of New Smyrna Beach was created under Chapter 22,408, Special Acts of 1943, as Amended, which the city commission observed and which requires "Every ordinance of a general or permanent nature shall be published once within ten days after final passage."
It is accordingly our view that Ordinance 657 was properly advertised. State v. North Miami, Fla. 1954, 73 So.2d 899.
In the promulgation of a single issue of revenue certificates has the City of New Smyrna Beach the power to do so in equal parity denominations?
Section 184.08(4), Florida Statutes, relating to parity obligations, is as follows:
"The ordinance or resolution providing for the issuance of sewer revenue bonds may also contain such limitations upon the issuance of additional sewer revenue bonds as the council may deem proper, and such additional bonds shall be issued under such restrictions and limitations as may be prescribed by such ordinance or resolution."
*470 Subsection 15 P of Ordinance 657 provides for the issuance of parity certificates as follows:
"The City reserves the right to issue additional Certificates payable from and secured by a pledge of the net revenues of the system and from the proceeds of the Cigarette Tax on a parity with the Certificates herein authorized. Any such Certificates shall be issued solely for the purpose of additions, extensions, improvements and repairs to the system and subject to the following conditions and provisions: * * *."
The conditions under which parity certificates are issued are lengthy and are not quoted. It is sufficient to say at this time requisite power exists to do so under Chapter 184, Florida Statutes, F.S.A., and that such power has been approved by this court. Constans v. Delray Beach, Fla. 1962, 138 So.2d 497, and State v. Florida Development Commission, Fla. 1962, 143 So.2d 676.
The next question raised by appellants challenges the correctness or validity of the special assessments.
We have searched the record diligently and we find no proof whatever of any irregular or illegal assessments. There was no one before the city commission to protest the assessments at the appropriate time; no question was ever raised as to procedure employed in making the assessments. Appellants' challenge to the assessments is based on pure assumptions without supporting evidence. The assessment roll was presented in evidence and the certificate of the engineer shows the basis on which the assessments were made. It reflects correct application of the law. There is a complete lack of evidence to show that any property was unjustly assessed or that it was assessed in excess of benefits. Under such circumstances the assessments are presumed to be correct; at least the burden was on appellants to establish their invalidity. Rosche v. Hollywood, Fla. 1952, 55 So.2d 909.
The next question with which we are confronted is whether or not the trial court abused his discretion in refusing appellants a continuance.
Continuances in bond validation proceedings are controlled by Chapter 75, Florida Statutes, F.S.A. Appellants were on notice of this and they were on notice of the time of trial, but they came to the trial unprepared and made no showing of what they expected to prove or what profit a continuance would give them. We think the continuance was properly denied. State v. Florida State Turnpike Authority, supra.
It is last contended that the trial court abused his discretion in entering final decree prior to preparation of the transcript.
It is admitted that the final judgment was entered prior to transcribing the testimony, but the trial court heard the testimony and knew what the final decree would be. He could have entered it at any time. At any rate, it was a matter in the discretion of the court and we find no abuse of his discretion.
It is accordingly our view that the final decree validated sewer revenue certificates secured by net revenues from the sewer system as defined herein. It is also our view that said certificates are not bonds within the meaning of the Constitution of the State of Florida or the Charter of New Smyrna Beach, no pledge of the ad valorem taxing power is imposed to support them. The City Charter of New Smyrna Beach required that the ordinance authorizing said revenue certificates be published only one time, which was done. We find no instance in which the discretion of the chancellor was abused, so his final decree is in all respects affirmed.
Affirmed.
ROBERTS, C.J., and THOMAS, DREW and HOBSON (Ret.), JJ., concur.