286 So.2d 193 (1973)
ORANGE COUNTY CIVIC FACILITIES AUTHORITY, a Body Politic and Corporate, in Orange County, Florida, Appellant,
v.
STATE of Florida, and the Taxpayers, Property Owners and Citizens of the County of Orange Including Non-Residents Owning Property or Subject to Taxation Therein, et al., Appellees.
No. 44051.
Supreme Court of Florida.
October 22, 1973.
Rehearing Denied December 11, 1973.
Bobby G. Wombles, of Icardi, Wombles & Livingston, Winter Park, and Freeman, Richardson, Watson, Slade, McCarthy & Kelly, Jacksonville, for appellant.
Stephen P. Kanar, of Fishback, Davis, Dominick & Simonet, Orlando, for appellees.
ERVIN, Justice.
This is an appeal of a judgment of the Circuit Court of Orange County, Florida, denying validation of a bond issue. The appeal was taken pursuant to Section 3(b) (2), Article V of the 1968 State Constitution F.S.A. and the former provision of Section 4(2) of Article V of the 1885 Constitution as amended, which provision now exists as an unrepealed statute under Section 20(g) (the schedule) of revised Article V of the 1968 State Constitution as amended.
The Orange County Civic Facilities Authority established by Chapter 71-803, Laws of Florida, sought validation of $4,200,000 Civic Facilities Bonds, Series 1973, dated April 1, 1972, to be issued by the Authority.
The Circuit Court of Orange County at first validated the bonds but on motion for rehearing entered an amended final judgment denying validation of the bonds. This appeal ensued.
Pursuant to Chapter 71-803 the Orange County Civic Facilities Authority was leased the Tangerine Bowl by the City of Orlando. The Authority through the proposed bond issue, a revenue issue, sought to finance the enlargement and improvement of the Bowl, a football stadium, and its related facilities and hopefully among the goals to be achieved by the improvement of the Bowl was to attract for the Orlando community a membership in or franchisement of a football team in one of the professional leagues of national football.
The stumbling block leading to the denial of validation of the bonds was an agreement (referred to as the Cooperation Agreement) between the Board of County Commissioners of Orange County and the Authority under which Orange County *194 agreed to provide the Authority with a maximum of $200,000 a year for payment on the proposed bonds from non-ad valorem tax revenues accruing to the County. This agreement was found by the Circuit Court to be in violation of Section 5, Paragraph 13, of Chapter 71-803, Laws of Florida, which reads as follows:
"(13) Bonds issued under the provisions of this act shall not be deemed to constitute a debt of the County of Orange or any other governmental unit in Orange County or a pledge of the faith and credit of the County of Orange or any other governmental unit in Orange County, and a statement to that effect shall be recited on the face of the bonds."
The Circuit Court further stated in its judgment that the proposed bonds
"are an indirect, but nevertheless real, debt of Orange County and pledge of its faith and credit; that the record reveals that, contrary to the restriction imposed by the legislature as set out above, it is primarily only the indirect pledge of the faith and credit of Orange County which would support and make marketable the said bonds; that while the evidence reveals that holders of the bonds could not directly proceed against Orange County for the money needed to service and retire the said bonds, the holders of the bonds could accomplish the same ultimate result by compeling (sic) the Plaintiff to enforce its agreement with Orange County to pay up to $200,000.00 per year to a fund of the Plaintiff out of which the bonds would be serviced and retired; that this indirect but enforceable pledge of the faith and credit of Orange County to indirectly service and retire the said bonds is prohibited by Chapter 71-803, Laws of Florida, in the same manner as if it were a direct pledge; the Legislature clearly intended that the Plaintiff should be prohibited from issuing bonds which Orange County (and its taxpayers) would be required to repay and that is precisely what the Plaintiff here seeks to do; that since the said bonds violate the restrictions of Chapter 71-803, Laws of Florida by indirectly obligating Orange County (and its taxpayers) to repay them, the Plaintiff has no legal authority to issue the said bonds."
Our review of the record in this case and the applicable law leads us to the conclusion validation of the bonds should not be denied for the reasons stated.
Section 5, paragraph 5 of Chapter 71-803, reads in part as follows:
"(5) The following revenues may be pledged by the authority as security for and may be used for payment of the bonds of the authority issued pursuant to this act, interest thereon and other necessary expenses and costs of said bonds:
"(a) The revenues accruing to the authority from operation or use of facilities.
* * * * * *
"(c) Any other revenues provided to the authority by governmental units or by other entities for pledging by the authority as security for and payment of the revenue bonds of the authority issued pursuant to this act, interest thereon and other necessary expenses and costs of the revenue bonds. Such other revenues that may be so provided to the authority, in the discretion of the governmental units or other entities, shall include but not be limited to cigarette taxes as authorized by general law accruing to governmental units in Orange County, ad valorem taxes and occupational license taxes or similar taxes levied, collected or received under general or special law or the law of any governmental unit in Orange County. Said other revenues may be so provided and used despite the provisions of any other law; provided, however, ad valorem taxes may be so provided and used only after full compliance with the State Constitution." (Emphasis supplied.)
*195 Section 5, paragraph 4 of the act provides:
"(4) payment of the bonds and the principal and interest thereon may be secured by a pledge of all or part of the revenues provided for in this act together with such other revenues as may otherwise be authorized by general or special law; provided, however, no ad valorem taxes may be pledged for payment of the bonds except after full compliance with the State Constitution."
It clearly appears from these last quoted provisions when read in connection with Section 5, paragraph 13 of the Act that any revenues of the County may be pledged for the retirement of the proposed bonds with the sole exception of ad valorem tax revenue. There is no inconsistency in these provisions when considered together since their obvious purpose when so read is only to exclude the pledging of ad valorem tax revenues. Even county ad valorem tax revenues may be pledged if approved at a referendum of the county electors. This conclusion is in conformity with the construction placed by this Court upon similar statutes authorizing local units to make revenue pledges other than ad valorem tax revenues for the payment of local unit bond issues. See Klein v. City of New Smyrna Beach (Fla. 1963), 152 So.2d 466, at 468.
Only recently this Court approved a similar pledge in the form of a cooperation agreement between Dade County and the Inter-American Center Authority. See State v. Inter-American Center Authority, Fla., 281 So.2d 201, opinion filed July 27, 1973.
The rationale of the following cases further supports the conclusion we reach herein. Compare: State v. Tampa Sports Authority (Fla. 1966), 188 So.2d 795; State v. City of Jacksonville (Fla. 1951), 53 So.2d 306; State v. City of Bartow (Fla. 1950), 45 So.2d 886; State v. Okaloosa County Board of Public Instruction (Fla. 1968), 214 So.2d 723; Webster v. North Orange Memorial Hospital Tax District (Fla. 1966), 187 So.2d 37; State v. Florida State Improvement Commission (Fla. 1947), 159 Fla. 338, 31 So.2d 548; Klein v. City of New Smyrna Beach, supra, and Town of Medley v. State (Fla. 1964), 162 So.2d 257.
The judgment denying validation is reversed with direction that further proceedings below be in accord herewith.
Reversed.
ROBERTS, ADKINS and McCAIN, JJ., concur.
CARLTON, C.J., and BOYD, J., dissent with opinion.
DEKLE, J., dissents.
CARLTON, Chief Justice (dissenting):
I must dissent, but I do not do so on the same basis as Mr. Justice Boyd. Article VII, Section 10, of the Constitution of the State of Florida does not, as he says, prohibit "all pledges of future revenue from any source, except as specifically provided therein."
We dealt with that provision of the Constitution in Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304 (Fla. 1971), stating:
"... [I]t was provided that the public revenue bond financing of these projects (airports, ports or industrial or manufacturing plants) alone, in contrast to the financing of any other projects, was recognized by the Constitution itself as not constituting the lending or use of public credit. Moreover, the naming of these particular projects was not intended to be exclusive, denying ab initio public revenue bond financing of all other types of projects... . This language may or may not apply to other projects, depending upon the particular circumstances in each instance." 247 So.2d at 308.
Article VII, Section 10, however, is not controlling in this case; in fact, it is irrelevant. *196 That section only prohibits a pledge of public credit for the benefit of private enterprise. (The specific projects mentioned in the section are deemed to be primarily for the public benefit.) Here there is no question of whether or not the bonds are for the benefit of a private, rather than public, purpose; and the circuit court did not deny validation on that basis.
Article VII, Section 12, is also irrelevant in this case; no ad valorem taxes are involved here in any way. Likewise, because ad valorem taxes are not involved, no referendum is necessary. (Fla. Stat. § 100.201[1] also does not require a referendum, because these are not bonds of "any county, district, or municipality"; they are bonds of the Authority.)
There are only two issues that are relevant in this case: whether or not the Legislature has delegated to the Authority the power to issue bonds financed as these are and whether or not Orange County has the power to pledge revenues to the Authority as it has done.
The only source of power for the Authority is Chapter 71-803, Laws of Florida, which does provide that bonds may be issued and which states specifically the revenues which may be pledged by the Authority for payment of the bonds. Included are those mentioned in Section 5(c) of the Act:
"Any other revenues provided to the authority by governmental units or by other entities for pledging by the authority as security for and payment of the revenue bonds of the authority issued pursuant to this act, interest thereon and other necessary expenses and costs of the revenue bonds. Such other revenues that may be so provided to the authority, in the discretion of the governmental units or other entities, shall include but not be limited to cigarette taxes as authorized by general law accruing to governmental units in Orange County, ad valorem taxes and occupational license taxes or similar taxes levied, collected or received under general or special law or the law of any governmental unit in Orange County. Said other revenues may be so provided and used despite the provisions of any other law; provided, however, ad valorem taxes may be so provided and used only after full compliance with the State Constitution."
Thus, the Authority may pledge specific tax revenues, such as cigarette taxes and occupational license taxes, which are provided by governmental units such as Orange County. This, however, is not the same as saying that the general credit of Orange County, or its taxing power in general may be pledged by the Authority for the payment of its bonds. Indeed, Section 5, par. (e)(13) of the Act provides that:
"Bonds issued under the provisions of this act shall not be deemed to constitute a debt of the County of Orange or any other governmental unit in Orange County or a pledge of the faith and credit of the County of Orange or any other governmental unit in Orange County, and a statement to that effect shall be recited on the face of the bonds."
With all due respect to Mr. Justice Ervin, he has construed Section 5(c) and par. (e)(13) of the Act to mean exactly nothing  that any and all revenues of Orange County may be used, in any manner, to retire the bonds (provided there is a referendum if ad valorem taxes are used). I agree with him that the two sections are not ambiguous, but I think they should be construed to mean something; and the proper construction seems obvious to me. The Authority has been empowered to *197 pledge any specific revenues it may receive from Orange County, but not Orange County's general taxing power or its faith and credit. In other words, if Orange County pledged to the Authority its cigarette taxes for the next forty years, the Authority could, in turn, pledge these taxes for retirement of its bonds (and the bondholders could enforce the County's pledge). If, however, the County binds itself to provide a specific amount of money, to come out of general revenues, for the retirement of the bonds, this pledge would be backed by the general credit and taxing powers of Orange County; it could not, in turn, be pledged by the Authority as an enforceable obligation to retire the bonds.
In this case, the Authority has done just what the Legislature has proscribed  it has funded its bonds, in part, on the faith and credit and general taxing power of Orange County. Therefore, the bonds were properly denied validation.
Additionally, it is my opinion that Orange County had no delegated authority to pledge its general credit and taxing power as it has done in this case. In State v. Orange County, 281 So.2d 310 (Fla. 1973), we went so far as to say that a non-charter county had the authority, under Fla. Stat. § 125.01(1)(r), F.S.A., to issue bonds without any other specific Legislative enabling act. That case, however, was restricted to bonds issued for the construction of county capital projects (one of the particular purposes listed in Fla. Stat. § 130.01 for which county bonds may issue) and which were financed by a particular tax revenue (race track and jai alai fronton funds).[2] It is true that we are not here dealing with a county bond issue, but we are going much further than our Orange County holding when we say that a county may now pledge its general credit for any purpose even in the face of a Legislative Act to the contrary.
In this case the Legislative Act creating the Orange County Civic Facilities Authority specifically provided that the bonds issued by the Authority "shall not be deemed to constitute a debt of the County of Orange ... or a pledge of the faith and credit of the County of Orange... ." Yet, contrary to this proscription, Orange County entered into a cooperation agreement with the Authority which contained the following provisions:
"Section Two. That in order to assist the Authority in the sale of said Bonds, the County does hereby covenant and agree with the Authority that it will in each of its fiscal years pay over to the Authority for deposit into the Sinking Fund and the various Accounts therein and into the Operation and Maintenance Fund, for the payment of said Bonds, or any temporary obligations issued in anticipation of the sale and delivery of said bonds, and the operation and maintenance expenses of the Authority, any deficits in the amounts then required to be on deposit in said Sinking Fund and the various Accounts therein and in said Operation and Maintenance Fund under the provisions of the Resolution, but not exceeding, however, a total amount of Two Hundred Thousand Dollars ($200,000.00) in any one fiscal year... .
"Section Four. That the County further covenants and agrees with the Authority that this agreement shall be deemed to have been entered into for the benefit of the holders of any of said Orange County Civic Facilities Authority, Civic Facilities Revenue Bonds, Series 1973, or the coupons appertaining thereto, as well as for the County and the Authority, and further that the obligation of the County to include in each of its annual budgets and to pay the Authority, from moneys other than ad valorem taxes, in each fiscal year, an amount equal to any deficits *198 in the amounts required to be on deposit in the Sinking Fund, the various Accounts therein and in the Operation and Maintenance Fund, but not exceeding a total of Two Hundred Thousand Dollars ($200,000.00) in any one fiscal year under the provisions of said Resolution, as provided in paragraph 2 hereof, may be enforced in any court of competent jurisdiction by any of the holders of said Civic Facilities Revenue Bonds, Series 1973, or any of the coupons appertaining thereto." (Emphasis added)
No specific tax revenues are mentioned in the agreement (except for the excluded ad valorem taxes); the County has simply obligated itself to pay up to $200,000 per year for forty years out of general county revenues for the retirement of the Authority's bonds. It has pledged the faith and credit of the County and created a county debt  both of which it was prohibited from doing.
This day of spiralling governmental spending and increasing burdens on taxpayers is not the time to relax restrictions on such spending, to loosely interpret statutes and Constitutional provisions intended to protect the taxpayers from burdens they might not wish to shoulder, or to start automatically approving nearly every bond issue which comes before this Court  as we seem to have been doing lately.
The bond issue now before us is one, in particular, which should not be validated as proposed, for the reasons I have stated above. Therefore, I dissent.
DEKLE, J., concurs in the conclusion.
BOYD, Justice (dissenting).
I must respectfully dissent to the majority opinion.
The order of the trial court, in refusing to validate the bond issue, was correct and should be affirmed by this Court.
Sections 10 and 12 of Article VII of the Constitution of the State of Florida prohibit the pledging of the general credit of state and local governmental entities for periods of greater than twelve months without a vote of approval by the electorate. This is subject to certain exceptions  including seaports, airports, and industrial plants. The majority opinion construes the Constitution to prohibit pledging the general credit only when the debt is to be paid from ad valorem taxes. The Constitution prohibits all pledges of future revenue from any source, except as specifically provided therein. The proposed use of the bonds approved by the majority opinion does not fall within any of the foregoing exempted categories, and must, therefore, be rejected, unless, and until, approved by the voters of Orange County.
The majority opinion relies heavily upon State v. Inter-American Center Authority.[1] In that case, Dade County had entered into a working agreement with the Inter-American Center Authority constituting a pledge of its credit for a period greater than twelve months. The two cases, however, may be distinguished. In the Inter-American Center Authority case, the funds are to be used for developing an international center. This Center is to be utilized by people of the Americas, and other countries, and will be located adjacent to the seacoast. It will be used by persons landing by sea and air in the greater Miami area on their way to the Inter-American Center, and will further the development of international trade and industry. For the above reasons, the Inter-American Center bonds fall within the above-mentioned exceptions granted in the Constitution.
In the case sub judice, the funds are to be used for development of the Tangerine Bowl. Such a use has little or no relationship to air and sea commerce, or to the development of industry.
Because the proposed-herein bond issue conflicts directly with the provisions of Sections 10 and 12 of Article VII of the Constitution of the State of Florida, I must dissent.
NOTES
[1] "Whenever any county, district, or municipality is by law given power to issue bonds, such bonds shall be issued only after the same have been approved by the majority of votes cast in an election by freeholders who are qualified electors residing in the county, district or municipality."
[2] The absence of such Legislative authorization to pledge specific tax revenues to finance a bond issue was one of the bases of Mr. Justice Dekle's dissent in State v. Orange County, in which dissent I concurred. In the instant case, there is such authorization.
[1] 281 So.2d 201 (Fla. 1973).