QUESTION: May the board of county commissioners of a noncharter county validly adopt a rent control ordinance applying to mobile home parks?
SUMMARY: Until legislatively or judicially clarified to the contrary, it is the safer course to assume that the board of county commissioners of noncharter counties are not authorized by the provisions of general law to adopt rent control ordinances. Article VIII, s. 1(f), State Const., provides in part that "[c]ounties not operating under county charters shall have such power of self-government as is provided by general or special law. . . ." As explained in the commentary accompanying this constitutional provision in 26A F.S.A. at p. 270, This subsection embodies new provisions which were proposed in a different manner by the Constitutional Revision Commission. That recommendation was that counties shall have the power of self-government except as otherwise provided by general or special law. The reverse is now the case under this subsection which provides that "counties shall have such powers of self-government as is provided by general or special law." Absent special or general legislation counties have no constitutional powers under this subsection. See also State ex rel. Volusia County v. Dickinson, 269 So.2d 9, 11 (Fla. 1972), in which it is stated that "[n]on-charter counties . . . shall only have the power of self-government as is provided by general or special law." The foregoing constitutional provision was first implemented by the Legislature's enactment of Ch. 69-234, Laws of Florida, which became s. 125.65, F.S. 1969. Applying to both charter and noncharter counties, that statute provided in pertinent part that (1) In accordance with the provisions of s. 1, Art. VIII of the state constitution, counties shall have all powers of local self-government, including governmental, corporate and proprietary powers, to enable them to conduct county government, perform county functions, and render county services, and may exercise any such power for county purposes, and the health, safety or welfare of its citizens not inconsistent with general or special law. * * * * * (3) The provisions of this section shall be so construed as to secure for the counties the broad exercise of home rule powers granted by the constitution. In Davis v. Gronemeyer, 251 So.2d 1, 5 (Fla. 1971), the Florida Supreme Court construed the foregoing statutory language as follows: The above language is general, and apparently covers both section 1(f), relating to non-charter counties, and section 1(g) relating to charter counties. We have seen, however, that non-charter counties have home rule power only to the limited extent provided by Article VIII, s. 6(d), Constitution of 1968. [providing that "[l]ocal laws relating only to unincorporated areas of a county on the effective date of this article may be amended or repealed by county ordinance."] Thus, the above statutory provision, insofar as it purports to grant broad home rule powers to counties must be and is hereby limited in effect to charter counties with single exception described in this opinion. In 1971 the Legislature repealed s. 125.65, F.S. 1969, and replaced the vague language of that provision with a code of county powers. See Ch. 71-14, Laws of Florida, revising s. 125.01, F.S. This enumeration of county powers, like s. 125.65, F.S. 1969, which it replaced, draws no distinction between charter and noncharter counties. The Florida Supreme Court considered several specific provisions of s. 125.01, F.S., in State v. Orange County, 281 So.2d 310 (Fla. 1973). There, in a 4-3 decision, it was determined that a noncharter county has the authority under s.125.01(1)(r) to issue revenue bonds without any other specific legislative enabling act. See also Orange County Civic Facilities Authority v. State, 286 So.2d 193 (Fla. 1973). However, it should be noted that s. 125.01(1)(r) expressly refers to the issuance by counties of bonds and revenue certificates. It should also be noted that Justice Dekle, in his dissenting opinion, 281 So.2d at p. 316, rejected several other provisions of s. 125.01(1), including s. 125.01(1)(w), as a source of authority for a noncharter county to issue revenue bonds without a referendum because such provisions were not "sufficiently definite." Similar reasoning was later applied in a circuit court decision invalidating a noncharter county ordinance which imposed a $200-per-dwelling-unit "land use fee" in addition to other fees before a building permit could be obtained from the county or a municipality. Janis Development Corp. v. City of Sunrise, 46 Fla. Supp. 41 (No. 73-3546, Cir. Ct., Broward County, Oct. 5, 1973), notice of appeal filed Oct. 30, 1973. The court stated at p. 59 of the decision: The county contends it has the power to enact the ordinance pursuant to Florida Statute 125.01(1)(w) . . . the power to tax should not need the art of sophistry of interpretation. The power to tax should be strictly construed and then absolutely specific and commanding. It is solely a people and legislative function, not one for the courts to carve out of ambiguous language. . . . Applying the foregoing constitutional, legislative, and judicial pronouncements to the instant inquiry, the Board of County Commissioners of Manatee County, a noncharter county, derives its legislative and governing power from general or special law. No special law bearing on the question here presented has been brought to my attention. With respect to the provisions of general law, I am aware of no statute which expressly authorizes the board of county commissioners of a noncharter county to adopt rent control ordinances. Nor am I aware of any express grant of authority from which the power of such a board to enact a rent control ordinance can be implied. See s.125.01(3)(a), F.S., in which it is stated that "[n]o enumeration of powers herein shall be deemed exclusive or restrictive, but shall be deemed to incorporate all implied powers necessary or incident to carrying out such enumerated powers." In making this observation, I have not overlooked s. 125.01(1)(w), which provides that county legislative and government bodies may Perform any other acts not inconsistent with law which are in the common interest of the people of the county, and exercise all powers and privileges not specifically prohibited by law. However, this statutory language, like the language of s. 125.65, F.S. 1969, quoted supra, is broad and general, and, consistent with the Florida Supreme Court's decision in Davis v. Gronemeyer, supra, may conceivably be limited in effect by a future court decision to charter counties. Moreover, other judicial reasoning discussed hereinabove has indicated that at least the critical aspects of the state's police power should be clearly delegated and not carved out of ambiguous language. In this regard, the enactment of rent control legislation is an extraordinary exercise of the police power of the state and is justified only in emergency periods of critical housing shortages. See City of Miami Beach v. Fleetwood Hotel, Inc., 261 So.2d 801, 804-805 (Fla. 1972), in which it was stated that "[a]n increase in the cost of living (an inflationary spiral) alone is not a justification for rent control legislation. . . ." See also City of Miami Beach v. Forte Towers, Inc., 305 So.2d 764, 768 (Fla. 1974). Accord: Attorney General Opinion 073-267. See generally, 52 C.J.S. Landlord and Tenant s. 551.3, pp. 547-548. In conclusion, therefore, I cannot unequivocally conclude that s. 125.01(1)(w), F.S., grants the boards of county commissioners of noncharter counties the authority to adopt rent control ordinances; and, since I am aware of no other provision which grants such authority, I believe it would be the safer course to assume that, until legislatively or judicially clarified to the contrary, the boards of county commissioners of noncharter counties are not delegated the power to adopt rent control ordinances.