QUESTION:
May a county borrow money from banks for the purpose of purchasing real property for authorized county purposes, said money to be repaid in approximately five equal annual installments from uncommitted racetrack or state revenue sharing funds with the first installment or principal and interest being paid out of the 1977-1978 fiscal year budget?
SUMMARY:
The board of county commissioners, as the governing body of a noncharter county, has statutory authority to borrow money to purchase real property for authorized county purposes, such as for use as an adjunct of the county courthouse, said purchase money to be repaid in five annual installments solely from uncommitted racetrack funds or state revenue sharing funds, subject to restrictions found in ss. 218.25, 130.012, and 215.685, F. S., with the first installment of principal and interest being paid out of the 1977-1978 fiscal year budget.
STATEMENT OF FACTS:
The County Commissioners of Gadsden County are studying the possibility of purchasing an existing building and lot on which it is located for use as an adjunct or extension to the existing courthouse.
In order to make this purchase, this commission, if it can legally do so, contemplates borrowing the amount of the purchase price from local banks. The principal to be repaid in five approximately equal annual installments (with accrued interest) from uncommittedracetrack or state revenue sharing funds with the first installment of principal and interest being paid out of the 1977-1978 fiscal year budget. (Emphasis supplied.)
Subject to the qualifications and restrictions set forth herein your question is answered in the affirmative.
Section 125.01(1), F. S., provides in part:
 The legislative and governing body of a county shall have the power to carry on county government. To the extent not inconsistent with general or special law, this power shall include, but shall not be restricted to, the power to:
(c) Provide and maintain county buildings.
 (r) . . . borrow and expend money, and issue bonds, revenue certificates, and other obligations of indebtedness, which would power shall be exercised in such manner, and subject to such limitations, as may be provided by general law. . . .
Section 125.01(1)(t), F. S., provides that the powers may be exercised through the adoption of ordinances and resolutions necessary for the exercise of the powers. Section 125.01(3)(a), F. S., provides:
 No enumeration of powers herein shall be deemed exclusive or restrictive, but shall be deemed to incorporate all implied powers necessary or incident to carrying out such enumerated powers, including, specifically, authority to employ personnel, expend funds, enter into contractual obligations, and purchase or lease and sell or exchange real or personal property. (Emphasis supplied.)
It is quite clear that the legislative and governing body of a county has the power to acquire or provide county buildings, such as buildings for use as an adjunct of the county courthouse, and to purchase real property and enter into the necessary contractual
obligations to accomplish such purchase. It is also clear that such governing body has the power to borrow money. Thus, statutorily, both the power to borrow money and the power to purchase real property for authorized county purposes exist. Nospecific statutory restriction is placed on either power. Thus the decision to purchase real property for county purposes and the decision to borrow money from banks to make such purchase would rest with the governing body of the county subject to its sound discretion, with the understanding that such must be exercised for a lawful county purpose. Section 125.031, F. S., provides for counties to enter into leases or lease-purchase agreements, relating to properties needed for public purposes, and is mentioned for information only since your fact situation contemplates a purchase and not a lease or lease-purchase.
You have stated that the money borrowed to make the purchase will be repaid from uncommitted racetrack or state revenue sharing funds. It is presumed that you mean that the money borrowed will be repaid solely from such funds and that ad valorem taxes willnot be pledged or committed either directly or indirectly for such repayment. In this regard see Nohrr v. Brevard County Educational Fac. Auth., 247 So.2d 304, which involved the issuance of $880,000 in revenue bonds, the proceeds of which would be used to construct the dormitory-cafeteria at the Florida Institute of Technology and to pay for all expenses and costs in connection therewith. The rents and other revenues received from the project, as well as the project, were to be assigned, pledged, and mortgaged as security for the payment of the principal and interest on the revenue bonds. With regard to the mortgage, the court stated at p. 310:
 Pursuant to authority contained in Chapter 69-345, the trust indenture under which the revenue bonds are to be issued grants a mortgage with right of foreclosure on the lands and building constituting the project to be financed.
 Commencing with the case of Boykin v. Town of River Junction, 121 Fla. 902, 164 So. 558 (1935), the Court without exception has held that revenue bonds secured by a mortgage on the physical properties to be financed could not be issued by public bodies unless approved at an election. (Emphasis supplied.)
Continuing at p. 311, the court stated:
 While perhaps the county would experience no coercion to levy a tax to prevent the foreclosure of the project leased to this nonprofit corporation in the event of a default; yet, such would not be the case if these bonds were issued to finance a project for Brevard Junior College or for the University of Florida. Most certainly the county or the legislature would feel morally compelled to levy taxes or to appropriate funds to prevent the loss of those properties through the process of foreclosure. (Emphasis supplied.)
 With certain exceptions not pertinent to the case sub judice, a mortgage with the accompanying right of foreclosure is not constitutionally permissible without an election . . . absent specific constitutional authority a mortgage securing revenue bonds of a public body should not be approved without an election.
 . . . the provisions in the trust indenture relating to the mortgage of the project and the accompanying right of foreclosure are deleted.
Although you have not advised that a mortgage is contemplated on the real property to be purchased as further or additional security for the loan, the Nohrr case and admonitions found therein should certainly be considered should the use of a mortgage be desired by the bank.
The case of State v. Orange County, 281 So.2d 310, upheld the issuance of capital improvement bonds to finance the acquisition and construction of authorized county buildings by a noncharter county payable solely from the county's share of racetrack and jai alai funds, bottoming its holding on s. 1(f) and (i), Art. VIII, s. 6(b), Art. VIII, (schedule), and s. 125.01(1)(c), (r), and (t), F. S. The court pointed out therein that ad valorem tax revenues were not required to be levied to service the contemplated bonds and that the county's taxing credit was not otherwise pledged. The court stated at p. 312:
 However, as indicated by the foregoing cases, if revenue bonds serviced by race track funds are involved no election is necessary. The Orange County ordinance, similarly as a special act might have done, pursuant to enabling law authorized the issuance of the revenue bonds without the necessity of an election. There is nothing inconsistent with any general or special law in the Orange County ordinance pledging the County's portion of the race track funds for the service of such bonds or in not requiring an approving election for the issue. (Emphasis supplied.)
It pointed out that ss. 130.01 and 130.012, F. S., prescribed the general law authority for the issuance of county bonds and that the requirements of s. 130.03, F. S., and s. 12, Art. VII, State Const., relating to the holding of an election prior to such issuance did not apply if ad valorem tax was not required to be levied or the county taxing credit was not otherwise pledged. Similarly, the Supreme Court in the case of Orange County Civil Facilities Authority v. State, 286 So.2d 193, upheld the issuance of revenue bonds by said authority to be repaid pursuant to an agreement between the county and the authority from operating revenues and non-ad valorem tax revenues accruing to the county and provided by it to the authority.
Accordingly, the borrowed moneys could be repaid from moneys accruing to the county and provided to the authority other than ad valorem tax revenues provided there exists no other statutory or constitutional restrictions placed on the use of such funds.
You advise that uncommitted racetrack or state revenue sharing funds are to be used for repayment of the loan. The use of racetrack funds was upheld in State v. Orange County, supra, wherein it stated:
 There is nothing in the 1968 Constitution that precludes a noncharter county from issuing revenue bonds without an approving referendum to finance the acquisition or construction of authorized county buildings, payable solely from a portion of its annual share of race track and jai alai fronton funds distributed to it pursuant to F. S. Sections 550.13 and 550.14, F. S. (Emphasis supplied.)
Accordingly, racetrack and jai alai fronton funds could be used for the contemplated purchase. Sections 550.13, 550.14, and 550.01, et seq., F. S., which were mentioned in the above case, would allow for such use of the funds.
Part II of Ch. 218, F. S., is the Revenue Sharing Act. Section218.21(6), defines `guaranteed entitlement,' and s. 218.25
provides in part:
 Local government shall not use any portion of the moneys received in excess of the guaranteed entitlement from the revenue sharing trust funds created by this part to assign, pledge, or set aside as a trust for the payment of prinicipal or interest on bonds, tax anticipation certificates, or any other form of indebtedness, and there shall be no other use restriction on revenues shared pursuant to this part. (Emphasis supplied.)
The restriction would restrict the use of the moneys received in excess of the `guaranteed entitlement' as set forth therein and would have to be complied with. Accordingly, funds received pursuant to the revenue sharing act could be used for the purpose contemplated subject to the restriction found in s. 218.25.
Prepared by: Larry Levy Assistant Attorney General