162 So.2d 257 (1964)
TOWN OF MEDLEY, a municipal corporation of Florida, Appellant,
v.
The STATE of Florida, and the taxpayers, property owners, and citizens of the Town of Medley, Florida, including non-residents owning property or subject to taxation therein, Appellee.
No. 32822.
Supreme Court of Florida.
March 23, 1964.
Swink & Swink and Clyde A. Willard, Miami, for appellant.
Richard E. Gerstein, State Atty., and Glenn C. Mincer and Joan Elizabeth Odell, Asst. State Attys., for appellee.
O'CONNELL, Justice.
The petition of the Town of Medley for validation of $156,000 of "Public Improvement Revenue Bonds" was denied by the trial court and this appeal followed.
To retire the subject bonds the Town pledged revenues from a proposed water system, proceeds of the cigarette tax, franchise tax on electric power, utility taxes and occupational license taxes. No ad valorem taxes were pledged and the form of the proposed bond and the ordinance authorizing the issue specifically provides *258 that the Town is not "directly or indirectly or contingently" obligated to levy ad valorem taxes for the payment thereof.
Thus it is apparent that the "Public Improvement Revenue Bonds" proposed to be issued are not bonds within the meaning of Section 6, Article IX, Fla. Const., and a freeholders election is not required as a condition to their being lawfully issued.
The funds received from the proposed issue are to be used to construct a water system, streets, storm sewers, and a building to house the Town's water, fire and police departments.
The State alone filed answer to the petition and objected to the issuance of the bonds.
Nevertheless, after the final hearing the Chancellor entered a decree denying validation, stating his reasons which we will discuss below.
The first reason given by the Chancellor for refusing to validate the bonds was that validation thereof would directly result in an increase in real property taxes without vote of the freeholders.
As stated earlier nothing in the bonds or the supporting ordinance pledges the ad valorem taxing power of the Town to meet the obligation created thereby.
In any instance in which a municipality has been using funds from special non-ad valorem sources of revenue to meet its operating costs and then diverts those funds by pledging them to payment of a specific indebtedness as done here, the result will probably be that ad valorem taxes will have to be increased to make up the deficiency in funds available for operating expenses.
Nevertheless, this result does not make the revenue bonds or certificates subject to the provisions of Section 6, Article IX, of our State Constitution, F.S.A. A contrary holding would mean that any pledging of non-ad valorem revenues previously used for the general operating expenses of a municipality would require approval by vote of the freeholders and such was never the purpose of the cited constitutional provision.
Only bonds or certificates of indebtedness which directly obligate the ad valorem taxing power are encompassed by Section 6, Article IX, Fla. Const. The incidental effect on use of the ad valorem taxing power occasioned by the pledging of other sources of revenue does not subject such bonds or certificates to that constitutional requirement.
We have consistently and repeatedly so held. Schmeller v. City of Fort Lauderdale, Fla. 1948, 38 So.2d 36; State v. City of Lakeland, Fla. 1949, 42 So.2d 764; State v. City of Daytona Beach, Fla. 1949, 42 So.2d 580; State v. City of Pensacola, Fla. 1949, 40 So.2d 569; State v. City of Pompano Beach, Fla. 1950, 47 So.2d 515; State v. City of Jacksonville, Fla. 1951, 53 So.2d 306; and State v. City of West Palm Beach, Fla. 1960, 125 So.2d 568.
It may be true that the pledging of the special sources of revenue to retire the subject revenue bonds may require the Town of Medley to increase its ad valorem taxes in order to meet its operating expenses. Nevertheless, this does not require that the bonds be approved by freeholders vote since the ad valorem taxing power of the Town is not directly pledged to the payment of the bonds.
The first ground advanced by the Chancellor is therefore not a valid basis for denying validation.
The second ground given in the decree denying validation was that the proposed plan of financing was "unreasonable and not financially and economically feasible" under the facts and circumstances of this case and "would eventually result in depriving the Town of its traditional and necessary operating expenses."
We have consistently ruled that questions of business policy and judgment incident to *259 the issuance of revenue issues are beyond the scope of judicial interference and are the responsibility and prerogative of the governing body of the governmental unit in the absence of fraud or violation of legal duty. State v. City of Daytona Beach, 1934, 118 Fla. 29, 158 So. 300; State v. Florida State Turnpike Authority, Fla. 1961, 134 So.2d 12, and State v. Dade County, Fla. 1962, 142 So.2d 79.
In State v. Dade County, supra, Mr. Justice Drew speaking for this Court explained that the courts do not have the authority to substitute their judgment for that of officials who have determined that revenue certificates should be issued for a purpose deemed by them to be in the best interest of those whom they represent. The responsibility of the courts in such proceedings is primarily that of determining whether the issuing body has the power to act and whether it exercised that power in accordance with law.
A contrary holding would make an oligarchy of the courts giving them the power in matters such as this to determine what in their opinion was good or bad for a city and its inhabitants thereby depriving the inhabitants of the right to make such decisions for themselves as is intended under our system of government.
In the instant case the Town had the authority to construct the proposed facilities, it had the authority to issue the subject revenue bonds, and it exercised that authority in accordance with law.
While it may be, as the Chancellor found, that the plan of financing was not most favorable to the Town and that the pledging of the special revenues will deprive the Town of these revenues for operating expenses, the plan is nonetheless legal and was lawfully adopted. The courts do not have the authority to deny its operation.
The third ground advanced in the final decree denying validation is that the contract entered into by the Town officials for private sale of the bonds was not in the best interest of the Town, offensive to the conscience of the court, contrary to public policy and therefore unlawful.
This contract provided for private sale of the $156,000 in revenue bonds for the sum of $149,760, i.e. $960 for each $1000 bond. It provided an interest rate of 5 1/4%, and that the first year's interest would be deducted from sales proceeds, a fixed penalty for redemption before 20 years and for payment of undetermined fiscal, legal, engineering and other costs from the proceeds of the bonds.
The Chancellor felt that these facts plus the fact that the Town, in negotiating the contract, did not have "recognized disinterested tax, fiscal and municipal advice" rendered the contract unlawful.
We cannot agree.
On this appeal the State, as its sole argument as to the validity of the contract, urges that the firm which agreed to purchase the bonds also acted as fiscal agent and advisor to the city in the negotiation of the contract. This, says the state, renders the contract void under the decision of this Court in City of Miami v. Benson, Fla. 1953, 63 So.2d 916.
The Chancellor did not find that the purchaser of the bonds also acted as the fiscal agent and advisor to the Town in this matter. The evidence does not show that such was the case.
Actually it appears that the city did not have the advice of a fiscal agent. While good business practice dictates that a city obtain such advice before contracting to sell its bonds, we know of no legal requirement that it do so.
It is obvious from a reading of the contract in question that the purchasers of the bonds drove a hard bargain with the Town.
Nevertheless, the State does not argue that the Town could not lawfully sell its bonds by private contract, nor does it show that the terms of the contract are in any way illegal.
*260 In State v. City of Daytona Beach, Fla. 1949, 42 So.2d 764, this Court ruled that in the absence of a provision of law requiring public sale of bonds or certificates of indebtedness, the issuing authority may adopt such method of sale as in their best judgment, in the exercise of a sound discretion, will be for the best interest of the municipality.
The Charter of the Town does not require a public sale of the bonds. No statute requiring such has been cited to us.
We, therefore, cannot agree that the contract is void even though it might not be favorable to the Town.
The last reason given by the Chancellor in refusing validation was that the Town had no authority to issue bonds at excessive costs and expenses for the primary speculative purpose of attracting industry.
The State, in its brief does not attempt to support this finding of the Chancellor and we can find no support for it.
There is no evidence of illegal costs or expenses which would vitiate the bonds.
Further there is no evidence showing that the proposed improvements are not to be used for municipal purposes. A water system, streets, storm sewers and housing for water, fire and police departments are the most common and essential of municipal facilities.
It may be that the primary motivation for construction of these facilities is the attraction of private industry. This is not unlawful. There is no showing that such facilities will be used for the sole benefit of any such industry or that the inhabitants of the Town will not enjoy the full benefits of the proposed improvements.
We have carefully considered all questions raised by the State and find them to be without merit.
For the foregoing reasons the decree of the Chancellor is reversed and the cause remanded for further proceedings consistent herewith.
DREW, C.J., and THOMAS, THORNAL and ROBERTS, JJ., concur.
CALDWELL, J., dissents with opinion.
CALDWELL, Justice (dissenting).
I must dissent.
The meaning and intent of Article IV, Section 6, Constitution of Florida, requires, as a prerequisite to validation of revenue bonds, a finding that the proposed issue is fiscally feasible and will not burden the real property with ad valorem taxes. In this cause every source of municipal revenue, other than ad valorem taxes, is fully pledged to the amortization of the bonded indebtedness and, as an immediate consequence, the real property must be taxed to operate the facility and to replace revenues otherwise available to meet the governmental expenses of the city.