431 So.2d 981 (1983)
STATE of Florida, et al., Appellants,
v.
CITY OF DAYTONA BEACH, Florida, Etc., Appellee.
Patrick J. TRESCOTT and Alice R. Trescott, et al., Appellants/Intervenors,
v.
CITY OF DAYTONA BEACH, Florida, Etc., Appellee.
Nos. 62311, 62312.
Supreme Court of Florida.
April 14, 1983.
Rehearing Denied June 16, 1983.
Stephen L. Boyles, State Atty., and Lawrence J. Nixon, Asst. State Atty., Daytona Beach, for appellant, State of Florida.
Craig T. James of James, Zimmerman, Paul & Clayton, DeLand, for appellants/intervenors Patrick J. and Alice R. Trescott.
Frank B. Gummey, III, City Atty., and Robert G. Brown, Reginald E. Moore and Nancye R. Crouch, Daytona Beach, and Robert O. Freeman of Freeman, Richardson, Watson & Kelly, Jacksonville, for appellee.
OVERTON, Justice.
This is a direct appeal from the trial court's validation of an interlocal agreement in which the City of Daytona Beach guaranteed to provide Volusia County a total of $29,000,000, in payments not to exceed $3,100,000 in any fiscal year, to support county revenue bonds previously validated and issued to finance the construction of a civic and convention center located within the territorial boundaries of the city. We have jurisdiction. Art. V, § 3(b)(2), Fla. Const. We find that the interlocal agreement is evidence of an indebtedness which may be validated under chapter 75, Florida Statutes (1981), and that it was properly validated by the trial court in this proceeding.
In 1978, Volusia County approved the imposition of a resort tax, the proceeds of which were to be used to pay part of the cost of financing the construction of a civic and convention center. Revenue bonds to finance the center were validated in December, *982 1980. In April, 1982, the city commission enacted an ordinance providing for the execution of the subject interlocal agreement with the county. The city's commitment to assist the county in financing the civic and convention center was necessary to make the project fiscally possible. The funds pledged by the city were to come from two sources: (1) the Guaranteed Entitlement Portion of Revenue Sharing Trust Fund for Municipalities received by the city pursuant to chapter 218, Part II, Florida Statutes (1981), and (2) franchise fees received by the city from the electric franchise granted by the city to Florida Power & Light Company. The ordinance specifically provided that the payments made under the agreement were not to be considered a general obligation or a pledge of the full faith and credit of the city or to create a lien on any city property other than the designated city funds.
After adopting the ordinance providing for the execution of the interlocal agreement, the city initiated this action pursuant to chapter 75, Florida Statutes (1981), seeking to validate the agreement, asserting that it had authority to enter into the agreement under chapter 163, Part I, Florida Statutes (1981), and chapter 166, Part III, Florida Statutes (1981). The trial court agreed and validated the agreement, holding that:
The sums to be paid by the City pursuant to the Agreement shall be used by the County for the purpose of constructing and operating a Civic Center and related facilities in accordance with the provisions of the Agreement. The obligation of the City to make payments pursuant to the Agreement shall not be a general obligation or indebtedness of the City or constitute a lien upon any property of or in the City, and neither the County nor any holder of bonds issued by the County to pay the cost of the Civic Center shall ever have the right to require or compel the levy of ad valorem taxes by the City in order to make payments pursuant to the Agreement, but said payments shall be required to be made solely from the limited special funds of the City in the manner provided in the Agreement.
In the final judgment, the trial court specifically found that in the agreement the city pledged only (1) proceeds from the Guaranteed Entitlement Fund and (2) franchise fees.
In this appeal, the state attorney and the intervenor, Trescott, contend (1) that chapter 75 does not authorize validation of interlocal agreements, particularly when an agreement is not part of a bond validation proceeding, and (2) that the city's pledge of the designated revenue sources could result in a direct pledge of ad valorem taxing power, which violates the referendum requirement of article VII, section 12, Florida Constitution, because the city did not establish the sufficiency of the pledged funds to meet the obligations of the previously validated bonds.
With regard to the first contention, we find that this type of interlocal agreement may be validated under chapter 75 because it is evidence of an indebtedness. In this instance, the agreement constitutes an obligation of the City of Daytona Beach to pay the designated revenues to Volusia County to assist in servicing the bonds issued by the county to pay the cost of constructing the civic and convention center. We have previously approved the use of this type of interlocal agreement as fiscal support for a capital project in Orange County Civic Facilities Authority v. State, 286 So.2d 193 (Fla. 1973), and State v. Tampa Sports Authority, 188 So.2d 795 (Fla. 1966). Appellants assert that the only way this agreement can be validated is by reopening the original bond validation proceeding for this project. We disagree. There is no legislative limitation or direction that this type of interlocal agreement must be included in the initial validation proceeding in order for the agreement to be a part of the fiscal support for the bond-funded capital project. We find the judiciary has no authority to impose such a limitation.
Appellants next assert that, because the city did not offer proof establishing the amounts of revenue available to make payments *983 under the agreement, the trial court could not legally or factually determine that no general obligation was created. Appellants contend that a provision in the interlocal agreement which states "that the payments required to be made by the City hereunder may be made from any funds of the City derived from sources other than ad valorem taxation and legally available therefor" obligates the city to use all non-ad valorem funds to make its payments under the agreement. We again must disagree. We find that, under the agreement, the city's obligation is limited to the fund sources specified in the interlocal agreement. The enforcement of this obligation by the county and the bondholders is restricted to (1) revenues from the Guaranteed Entitlement Funds and (2) franchise fees. The subparagraph of the agreement cited by appellants means that the city may pay from any legally available source of funds, other than ad valorem taxes, the amounts pledged by this interlocal agreement. The provision is permissive as to the city and is not enforceable against the city by the bondholders or by the county. The effect on ad valorem taxation under this construction of the agreement is incidental. The fact that such an obligation may have an incidental effect on ad valorem taxation does not subject the indebtedness to the constitutional requirement of a referendum. See State v. Alachua County, 335 So.2d 554 (Fla. 1976); Town of Medley v. State, 162 So.2d 257 (Fla. 1964). We have held such a pledge to be a promise to levy ad valorem taxes only when the record clearly reflects that all legally available non-ad valorem revenue sources have been pledged and the governmental body has agreed to do everything necessary to receive such revenue. County of Volusia v. State, 417 So.2d 968 (Fla. 1982). That circumstance is not present in the instant case. Only two specific revenue sources have been pledged in this case and this type of pledge has only an incidental effect on ad valorem taxes.
Finally, questions concerning the financial and economic feasibility of a proposed plan are to be resolved at the executive or administrative level and are beyond the scope of judicial review in a validation proceeding. The scope of judicial inquiry is limited to whether the public body had authority to incur the obligation, whether the purpose of the obligation is legal, and whether the proceedings authorizing the obligation were proper. See State v. City of Daytona Beach, 360 So.2d 777 (Fla. 1978); State v. City of Sunrise, 354 So.2d 1206 (Fla. 1978); State v. Manatee County Port Authority, 171 So.2d 169 (Fla. 1965); Town of Medley v. State, 162 So.2d 257 (Fla. 1964).
For the reasons expressed, we approve the trial court's validation of the interlocal agreement as an additional obligation to support the construction of a civic and convention center in Volusia County.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, McDONALD and EHRLICH, JJ., concur.