## GAYNOR, et al. v THE TOWN OF SEWALL'S POINT
### Case Nos. 86-315-CA, 86-490-CA
Nineteenth Judicial Circuit, Martin County
August 1, 1986 and September 17, 1986

## OPINION OF THE COURT

JOHN EMMETT FENNELLY, Circuit Judge.

### FINAL JUDGMENT AS TO TOWN OF SEWALL POINT'S COMPLAINT FOR DECLARATORY RELIEF

THIS ACTION came on before the Court for trial on May 16, 1986, with respect to those issues raised by the TOWN OF SEWALL'S POINT in its Complaint for Declaratory Relief in Case No. 86-490-CA. The Court having considered the evidence presented, the legal memoranda of the parties, and the arguments of counsel, does hereby find as follows:

1. The Court has jurisdiction over the parties to this action and over the subject matter.

2. The TOWN OF SEWALL'S POINT is a municipal corporation incorporated and existing under the law of the State of Florida.

3. The Defendants, FRANK GAYNOR, JOHN ADAMS and ART JOHNSON, are individuals residing within the boundaries of the Town of Sewall's Point in Martin County, Florida.

4. On or about February 12, 1986, the Defendants appeared before the Town Commission for the Town of Sewall's Point and presented two separate petitions requesting that proposed amendments to the Town Charter be put to a vote of the electorate. For identification purposes, said petitions shall be referred to herein as the "Franchise Fee Proposal" and the "Budgetary Purpose Proposal". Generally, the "Franchise Fee Proposal" sought to prohibit and nullify the imposition by the Town of any franchise fee or tax on any utility serving the Town. The "Budgetary Purpose Proposal" generally sought to prohibit the allocation or expenditure of either $100,000.00 or 205 of the Town's gross revenues for any single "purpose" or "project" without approval of a majority of voters voting in a referendum election.

5. The Defendants have demanded that the TOWN OF SEWALL'S POINT hold a special election at the earliest legal date in order to put the proposed amendments to a vote of the electorate.

6. There exists a bona fide dispute between the parties with respect

to the validity of the proposed charter amendments, and Plaintiff is legally entitled to have such doubt removed by this Court.

7. The "Franchise Fee Proposal", if adopted, would abrogate and nullify a source of revenue which the State legislature has determined to be a proper and lawful revenue source for municipal governments.

8. The Court further finds that the Franchise Fee Proposal, if enacted, would contravene those state statutes which permit municipalities to raise revenue both through franchise agreements and through taxation of the sale of electricity and other municipal services. *See, e.g., Fla. Stat.* § 166.231; § 180.14.

9. The Court further finds that the "Franchise Fee Proposal" would unconstitutionally impair the rights and obligations flowing from existing contracts between the TOWN OF SEWALL'S POINT and at least three separate entities, Perry Cable T.V. Corporation, Florida Power & Light Company and Southern Bell Telephone Company.

10. With regard to the "Budgetary Purpose Proposal", the Court finds that it would impermissibly and unconstitutionally restrict and contravene the TOWN'S constitutional and statutory authority to budget and spend. Fla. Const. Art. VIII § 2(b); *Fla. Stat.* § 166.011, *et., seq.*

Therefore, based on the above, it is hereby

ORDERED AND ADJUDGED that the proposed charter amendments material hereto are hereby declared to be unconstitutional as they both impermissibly infringe upon and restrict the TOWN OF SEWALL'S POINT constitutional and statutory authority both to collect revenues through the imposition of franchise fees and to budget and spend. It is further

ORDERED AND ADJUDGED that the Franchise Fee Proposal is declared unconstitutional on the additional grounds that it impermissibly and unconstitutionally violates the Federal and State Constitutions' protections against the infringement of contract rights and obligations.

The Court hereby reserves jurisdiction for the taxing of costs incurred in this cause.

DONE AND ORDERED this 1st day of August, 1986, in Stuart, Martin County, Florida.

### ORDER ON COUNTER PETITION REQUEST FOR DECLARATORY JUDGMENT

1. The Court has jurisdiction of both the subject matter and the parties.

2. This matter is properly brought pursuant to F. S. 86.011, et. seq.

3. All parties are proper parties and there exists a material dispute between the parties as to the validity of the pledge agreement in question.

THIS MATTER came on for hearing pursuant to a counter-petition filed by Gaynor, et al. The Court previously entered Orders dispositive of the Town of Sewall's Point original complaint for declaratory relief [F. S. 86.011]. This Order is directed to Count I of the Counter-petition, Count II being dismissed by Counter-petitioner prior to this hearing.

The Court having heard evidence, considered authorities and memoranda submitted by the parties and otherwise being fully advised hereby reaches the following findings of fact and conclusions of law.

### FINDINGS OF FACT

(1) On 18 December 1985 the Town of Sewall's Point entered into a pledge agreement with the First National Bank and Trust Company of Stuart. (Exh. #2)

(2) This agreement was duly authorized by Resolution #252 of the Town Commission of Sewall's Point. (Exh. #2)

(3) Pursuant to the agreement the Town agreed to pledge a portion of funds received by the Town received under its franchise agreement with Florida Power & Light.

(4) Prior to execution of the agreement franchise fees from this source were historically placed in the general revenue fund of the Town.

(5) The repayment plan required an expenditure of approximately $35,000.00 per year which represented approximately 50% of anticipated revenue from this source.

(6) A contingency financing provision (Pg. 4, Para f) provided that reduction or elimination of this source of funding would obligate the Town to substitute a pledge of non ad valorem revenues sufficient to meet the terms of the pledge agreement.

(7) That the contingent pledge would be derived from sources other than ad valorem taxes on real or personal property. (Pg.4, Para f)

(8) The agreement further provides that neither the note nor the interest shall be or constitute a general obligation or indebtedness of the Town. (Pg. 2, Para 4)

(9) The Court further finds that the 1985-86 budget of the Town reflects total revenue of $445,491.00 of which $244,758.00 or 54% is derived from non ad valorem sources.

64

(10) In the proposed FY 1986-87 budget the budget reflects total revenues of $583,045.00 with non ad valorem sources constituting 64% of total revenue.

(11) There is no evidence and the Court finds that the Town has not directly pledged all sources of revenue other than ad valorem taxation. Nor has it obligated itself to continue to receive all of its non ad valorem source of revenue.

(12) The agreement involves a pledge of 14.3% of non ad valorem sources of revenue and 7.9% of total revenue in FY 1985-86; and 12.7% of non ad valorem amounting to 8.2% of general revenue for FY 1986-87.

## CONCLUSIONS OF LAW

Counter-petitioners contend that the Town by pledging the revenues indicated in the findings of fact has in effect, violated the referendum requirement of Article VII, Section 12 of the Florida State Constitution and F. S. 166.121(2). These provisions mandate affirmative approval by the taxpayers if bonds, certificates of indebtedness, or tax anticipation certificates are (1) payable from ad valorem taxation and (2) mature more than twelve (12) months after issuance. In essence, the counter-petitioners argue that diversion of the Florida Power & Light franchise fee from general revenue to the pledge will result in an impermissible increase in ad valorem tax rates. They further argue that the pledge to use other sources on non ad valorem taxes, on a contingent basis, results in a pledge of all non ad valorem revenues and will therefore result in an unauthorized rise in ad valorem rates of taxation. The Counter-petitioners rely principally on *County of Volusia v. State*, 417 So.2d 968 (1982). In *Volusia*, the Florida Supreme Court struck down a bond proposal which (1) obligated the county to both *pledge all* legally available sources of revenue other than ad valorem taxes; and (2) "do all things necessary to continue receiving these revenues". (*Volusia* at pg. 969)

This, in the Court's view, created a situation which would lead to "inevitably higher ad valorem taxes during the life of the bonds." (*Volusia* at Pg. 972). Petitioners further contend that in so ruling, the Supreme Court *sub silentio* overruled *Town of Medley v. State*, 162 So.2d 257 which held that incidental effects on the use of ad valorem taxing power by pledge of non ad valorem tax sources was permissible. (See trial brief pgs. 2-3)

A close reading of both *Medley* and *Volusia* together with subsequent decisions casts doubt on Counter-petitioners' position. The

**65**

Supreme Court in *Volusia* clearly indicated the *Medley* rational of incidental effect was still valid. The Court was of the opinion, however, that the proposed actions of the county went beyond indirect or incidental effect on ad valorem revenues and was in effect a direct pledge of ad valorem revenue sources. This in the Court's view was impermissible.

In the present case the Town has obligated itself to pay Florida Power & Light franchise fees in satisfaction of the agreement in question. Other sources on non ad valorem revenue are only to be used if the town "eliminates or reduces those fees". (Pg. 4 of agreement) Thus, the Town has neither pledged all non ad valorem sources nor surrendered its right to reduce either the fee in question or other non ad valorem sources.

The continuing vitality of the *Town of Medley* principle has been demonstrated in cases decided after *County of Volusia* noted above. In *City of Palatka v. State*, 440 So.2d 1271, the Supreme Court, citing *Medley*, approved bonds secured by a pledge of 80% of non ad valorem sources. Similarly in *State v. City of Daytona Beach*, 430 So.2d 981, the Supreme Court approved an agreement similar to the one at issue in this case and noted "We have held such a pledge to be a promise to levy ad valorem taxes only where the record clearly reflects that *all* legally available non ad valorem revenue sources have been pledged and the governmental body has agreed to do everything necessary to receive such revenue." (*Daytona Beach* at Pg. 983) (*See also Jacksonville Shipyards v. Jacksonville Electric*, 419 So. 2d 1093)

The agreement in question represents a small percentage of both total revenue and non ad valorem revenue. Further, the contingency provisions with regard to alternative sources of payment in the agreement are strikingly similar to those approved in Daytona noted previously.

For the reasons noted the agreement in question is clearly distinguishable from *Volusia* and will result in only an indirect effect on ad valorem taxes. It is, therefore, permissible and does not require approval of the voters.

It is therefore the judgment of the Court that the Counter-Petition for Declaratory Judgment must be and is denied.

DONE AND ORDERED in Chambers, Martin County, Stuart, Florida, this 17th day of September, 1986.