539 So.2d 461 (1989)
STATE of Florida, et al., Appellants,
v.
BREVARD COUNTY, Florida, Etc., Appellee.
No. 72525.
Supreme Court of Florida.
March 2, 1989.
*462 Norman R. Wolfinger, State Atty., and Philip Archer, Titusville, for appellants.
Robert L. Nabors and George H. Nickerson, Jr. of Nabors, Giblin, Steffens & Nickerson, P.A., Tallahassee, and Daniel L. McDermott, Asst. County Atty., Brevard County, Merritt Island, for appellee.
GRIMES, Justice.
We review a final judgment validating certain obligations of Brevard County pursuant to chapter 75, Florida Statutes (1987). Our jurisdiction is predicated upon article V, section 3(b)(2), of the Florida Constitution, and section 75.08, Florida Statutes (1987).[*]
Pursuant to ordinance and resolution, the county authorized a lease-purchase arrangement for certain equipment. The county proposed to establish a not-for-profit corporation (lessor) to purchase certain equipment for lease to the county pursuant to a lease agreement. The county's obligation to make payments under the lease will be secured solely by non-ad valorem revenues actually budgeted for such purpose during any fiscal year. The lessor will assign to a fiduciary (trustee) its right to receive the lease payments from the county. The trustee will sell certificates of participation secured by the county's lease payments. Proceeds from the sale of the certificates will be used to purchase the leased equipment. The county will purchase the leased equipment on behalf of the lessor pursuant to an agency agreement. Title to specific items of leased equipment will be transferred to the county after all scheduled lease payments for such items have been made.
The term of the lease will expire on the earlier of (a) the date on which all scheduled lease payments, or provision therefor, have been made, or (b) the first day of any fiscal year for which the county adopts an annual budget without appropriating sufficient funds to make the scheduled lease payments. Prior to any termination of the lease, the county will have an option to prepay the lease payments and secure title to the leased equipment. If the lease is terminated, the lessor may sell or relet the leased equipment. The proceeds received from such sale or lease will inure to the benefit of the lessor, provided that any amounts received in excess of those which would otherwise have been payable by the county shall be returned to the county.
According to the state's brief:
Functionally, the County's obligation can most accurately be characterized as a one-year lease with annual "renewal options" in favor of the County. During its budget deliberations for each year, the County will have the option to "renew" the Lease for an additional year by appropriating sufficient funds to make the scheduled Lease payments. During any fiscal year for which funds are actually appropriated, the County will be obligated to make the scheduled Lease payments. This obligation will be secured by the County's non-ad valorem revenues, *463 except to the extent such revenues are pledged to pay other obligations of the County. If the County elects not to "renew" the Lease, it has no further obligation to make scheduled Lease payments and no further right to possession of the Leased Equipment. Upon termination of the Lease, the County is entitled to secure replacement equipment if it desires to do so.
Initial Brief of Appellants at 2-3. In its brief, the county submits that the proposed transaction offers an alternative to either purchasing equipment through the issuance of traditional revenue bonds or leasing equipment from a commercial vendor. Thus, "an annual lease with renewal options provides a method to acquire ... equipment while preserving the public body's budgetary discretion in future years." The county says:
The transaction sought to be validated in this cause offers three principal advantages over a traditional commercial lease with renewal options: first, the public body exercises significantly more control over the activities of the lessor, including matters related to acquisition, delivery and installation of equipment, and matters relating to insurance, maintenance and repair of either land or equipment; second, the "single client" nature of the lessor insulates the public body from financial or other difficulties which may result from transactions of the lessor with other lessees; and third, access to the tax-exempt capital market is likely to result in lower costs.
Answer Brief of Appellee Brevard County at 2.
In this appeal, the state contends that the county's obligation under the lease violates article VII, section 12, of the Florida Constitution, which prohibits counties from issuing certificates of indebtedness payable from ad valorem taxation and maturing more than twelve months after issuance except upon approval by vote of the freeholders. Even though the lease agreement provided that payments can be made only from non-ad valorem revenues, the state argues that the practical effect of the arrangement would have a substantial impact on the future exercise of the ad valorem taxing power, thereby violating the intent of article VII, section 12. The state relies upon County of Volusia v. State, 417 So.2d 968 (Fla. 1982), in which the county sought to issue bonds to be secured by the county's pledge of all legally available unencumbered sources of county revenue other than ad valorem taxation. This Court reasoned that Volusia County's pledge of all available non-ad valorem revenue together with its promise to do all things necessary to continue to receive the various revenues would inevitably lead to higher ad valorem taxes during the life of the bond. Reasoning that "[t]hat which may not be done directly may not be done indirectly," we denied the proposed bond validation because of the absence of a referendum. Id. at 972.
We find the proposed bond issue in the instant case easily distinguished from that in County of Volusia. Not only is there no covenant to maintain revenue-generating services, the county, in adopting its budget on an annual basis, preserves its right to decide to terminate the lease without further obligation. As succinctly noted by the trial court:
[A]ny time you spend money it might have some reaction on the ad valorem taxes but I find the compulsion to increase ad valorem taxes does not exist in the posture of this bond validation.
In the past, this Court has approved bond issues in which the potential impact on ad valorem revenues was substantially greater than the financing arrangement in this case. E.g., City of Palatka v. State, 440 So.2d 1271 (Fla. 1983); State v. City of Daytona Beach, 431 So.2d 981 (Fla. 1983); Jacksonville Shipyards, Inc. v. Jacksonville Elec. Auth., 419 So.2d 1092 (Fla. 1982).
The state also contends that by incurring obligations under the proposed lease the county will violate the principle of Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304 (Fla. 1971). In Nohrr, the county proposed to issue bonds to construct educational facilities. There was to be no pledge of general revenue. *464 Notwithstanding, this Court held that in the absence of an election the trust indenture could not legally include a mortgage on the project with right of foreclosure because the county would feel a moral compulsion to levy taxes to prevent the loss of the property through foreclosure.
The rationale of Nohrr does not apply to the instant case. There is no prohibited security interest with right of foreclosure. The county is simply renting equipment under the lease. As in the case of any other lease, if the lease is terminated, the county would have a contractual commitment to return to the lessor any leased equipment still owned by the lessor. The state's contention that the county would be under compulsion to keep the lease current in order to protect the "equity" built up in the equipment is unfounded. If the county permits the lease to terminate, the lessor may sell or relet the equipment. In either event, any monies received by the lessor which exceed the county's remaining obligations under the lease will be returned to the county. With its "annual renewal option" under the lease, the county maintains its full budgetary flexibility. We see no illegality in the county's proposal.
We hasten to add that our approval of the proposed financing arrangement does not constitute an endorsement of the certificates of indebtedness to be issued. In passing on bond validations, it is not the function of this Court to decide whether the proposed financing is wise or even fiscally sound. State v. City of Panama City Beach, 529 So.2d 250 (Fla. 1988).
We approve the judgment of validation.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, BARKETT and KOGAN, JJ., concur.
SHAW, J., dissents with an opinion.
SHAW, Justice, dissenting.
I do not agree that we have jurisdiction over this case. The thrust of the county's argument is that the bonds are being issued by a nonprofit, nongovernment body and the county has no obligation under the bonds. The majority obviously agrees, "[t]he county is simply renting equipment under the lease." At 464. If that is so, neither we nor the circuit court has jurisdiction under article V, section 3(b)(2) of the Florida Constitution and chapter 75, Florida Statutes (1987), to validate bonds issued by private parties or to validate short-term leases of equipment entered into by county government.
This "bond validation" action was apparently initiated by appellee Brevard County to obtain a judicial imprimatur on this "creative" financing arrangement. I would reverse the judgment below and remand for dismissal based on the absence of jurisdiction.
NOTES
[*] Justice Shaw questions the Court's jurisdiction over this case, a point not raised by any party to the proceeding. We believe jurisdiction lies because the entire thrust of the state's argument is that by entering into an equipment leasing arrangement with a nonprofit corporation which issues certificates of indebtedness to pay for the equipment, the county is doing indirectly what it cannot do directly without meeting the referendum requirement of article VII, section 12, of the Florida Constitution. In essence, this Court rejected a similar argument against jurisdiction in State v. City of Daytona Beach, 431 So.2d 981 (Fla. 1983), when it validated an agreement by the city to pay designated revenues to the county to assist in servicing county revenue bonds previously validated and issued to finance the construction of a convention center.