561 So.2d 549 (1990)
STATE of Florida, Appellant,
v.
SCHOOL BOARD OF SARASOTA COUNTY, Appellee.
STATE of Florida, Appellant,
v.
SCHOOL BOARD OF COLLIER COUNTY, Appellee.
STATE of Florida, Appellant,
v.
FLORIDA SCHOOL BOARDS ASSOCIATION, INC., Appellee.
Nos. 74979, 75009 and 75154.
Supreme Court of Florida.
April 26, 1990.
*550 Earl Moreland, State Atty., and Henry E. Lee, Asst. State Atty., Twelfth Judicial Circuit, and Michael Moran of Joy, Gause, Genson & Moran, Sarasota, Joseph P. D'Alessandro, State Atty., and Michael J. Provost, Asst. State Atty., Twentieth Judicial Circuit, Naples, Lawson Lamar, State Atty., and Carol Levin Reiss, Asst. State Atty., Ninth Judicial Circuit, Orlando, for appellant.
Robert L. Nabors of Nabors, Giblin & Nickerson, Tallahassee, and A. Lamar Matthews, Jr. and Theodore C. Eastmoore of Williams, Parker, Harrison, Dietz & Getzen, Sarasota, for appellee School Bd. of Sarasota County.
Joseph L. Shields, Gen. Counsel, and Dale S. Recinella, Sp. Counsel of Ruden, Barnett, McClosky, Smith, Schuster & Russell, P.A., Tallahassee, amicus curiae for Florida School Boards Ass'n, Inc.
Robert O. Freeman of Squire, Sanders & Dempsey, Jacksonville, amicus curiae for School Dist. of St. Lucie County.
Daniel U. Livermore, Jr. of Livermore, Klein & Lott, P.A., Jacksonville, and James H. Siesky, Siesky & Lehman, P.A., Naples, for appellee School Bd. of Collier County.
Marguerite H. Davis of Katz, Kutter, Haigler, Alderman, Davis, Marks & Rutledge, P.A., and Joseph L. Shields, Gen. Counsel, Florida School Boards Ass'n, Inc., Tallahassee, for appellee Florida School Boards Ass'n.

CORRECTED OPINION
PER CURIAM.
We review three final judgments validating certain obligations[1] pursuant to chapter 75, Florida Statutes (1989). We have jurisdiction. Art. V, § 3(b)(2), Fla. Const.; § 75.08, Fla. Stat. (1989). We affirm the final judgments.
Pursuant to resolutions, the School Boards of Sarasota, Collier and Orange Counties (boards) entered into agreements supporting the bonds and certificates of participation (bonds) under review. These agreements provide for the lease of public land owned by the boards to not-for-profit entities (by way of ground leases), the construction *551 or improvement of public educational facilities upon the leased lands and the annual leaseback of the facilities to the respective school boards (by way of facilities leases), and the conveyance of the lease rights of the not-for-profit entities[2] to trustees (by way of trust agreements). The trustees are to market the bonds and disburse funds to finance construction of the facilities. Title to the public lands remains in the respective school boards. Title to the facilities constructed with the proceeds of the bonds passes to the respective school boards at the end of the term of the ground lease. In the cases of Sarasota County and Collier County, the ground-lease term is up to thirty years. In the case of Orange County, the ground-lease term is fifteen years.
Money from several sources, including ad valorem taxation, will be used to make the annual facilities' lease payments.[3] If, in any year, a board does not appropriate money to pay the lease, the board's obligations terminate without penalty and it cannot be compelled to make payments.[4] The board then has two options. It may purchase the facilities and terminate the ground lease. Alternatively, it may surrender possession of the facilities and lands for the remainder of the ground-lease term and is free to substitute other facilities for those surrendered. The trustee may relet the facilities for the remainder of the leases' term or sell its interest in the leases to generate revenue to pay bondholders. As an additional precaution, insurance has been purchased for the benefit of bondholders to cover the risk of insufficient revenue. Amounts received in excess of that owed to bondholders must be paid to the board as ground rent.
We are presented with two basic issues: whether the agreements at issue here may be validated pursuant to chapter 75, Florida Statutes (1989), and, if so, whether article VII, section 12, Florida Constitution (1968), requires referendum approval for the bonds' validation.
Section 75.02 provides that a political subdivision of the state may determine its authority to incur bonded debt by filing a complaint in circuit court.[5] In State v. City of Daytona Beach, 431 So.2d 981 (Fla. 1983), we held that the city's complaint to *552 validate an "interlocal agreement"[6] pursuant to chapter 75 was proper because the agreement was evidence of the city's indebtedness to pay designated revenues to assist in servicing bonds which the interlocal agreement supported. In the instant cases, likewise, the supporting agreements  the facilities and ground leases and the trust agreements  are evidence of the boards' indebtedness. They constitute obligations of the boards, so long as funds are appropriated, to pay the designated revenues to the trustees to assist in servicing the bonds. Id. at 982.
Appellant argues that the benefits of chapter 75 validation proceedings are conferred on political subdivisions of the state, not private parties. The state asserts that it is the not-for-profit entities and trustees, rather than the school boards, who are employing chapter 75 procedures to impress the court's imprimatur upon this type of "creative" bond financing. We rejected this argument in State v. Brevard County, 539 So.2d 461 (Fla. 1989). We accordingly find that the boards are proper plaintiffs within the meaning of section 75.02.
Regarding the bonds' validity, the issue presented is whether a referendum is required by article VII, section 12 of the Florida Constitution (1968). We conclude that because these obligations are not supported by the pledge of ad valorem taxation, they are not "payable from ad valorem taxation" within the meaning of article VII, section 12, and referendum approval is not required.[7]
In State v. Miami Beach Redevelopment Agency, 392 So.2d 875 (Fla. 1980), we interpreted the words "payable from ad valorem taxation" in article VII, section 12 and held that a referendum is not required when there is no direct pledge of the ad valorem taxing power. We noted that although contributions may come from ad valorem tax revenues: "What is critical to the constitutionality of the bonds is that, after the sale of the bonds, a bondholder would have no right, if [funds] were insufficient to meet the bond obligations ... to compel by judicial action the levy of ad valorem taxation... . [T]he governing bodies are not obliged nor can they be compelled to levy any ad valorem taxes in any year." Id. at 898-99. The agreements here, as in Miami Beach, although supported in part by ad valorem revenues, expressly provide that neither the bondholders nor anyone else can compel use of the ad valorem taxing power to service the bonds.
In State v. Brevard County, 539 So.2d 461 (Fla. 1989), we interpreted the "maturing more than twelve months after issuance" language of article VII, section 12. The Brevard agreements provided traditional lease remedies and preserved the county's right, in adopting its annual budget, to terminate the lease without further obligation. We held that article VII, section 12 was not violated. As in Brevard, the agreements here give the boards freedom to decide anew each year, burdened only by lease penalties, whether to appropriate funds for the lease payments.
The state's fall-back position is that if an approving referendum is not constitutionally required, section 230.23(9)(b)5., Florida Statutes (1989), mandates a referendum in this instance.[8] We disagree. The pertinent *553 statutory section is a general grant of power to school boards with a proviso that if "the rental is to be paid from funds received from ad valorem taxation and the agreement is for a period greater than 12 months, an approving referendum must be held." We view the referendum requirement in this section as no more than a codification of the referendum requirement set forth in the constitution.
The state contends that County of Volusia v. State, 417 So.2d 968 (Fla. 1982), precludes validation in this instance. We disagree. In Volusia, the obligations were supported by the pledge of all legally available unencumbered revenues other than ad valorem taxation, along with a promise to fully maintain the programs and services which generated the non-ad valorem revenue. We held that referendum approval was required because the interrelated promises "in effect constitutes a promise to levy ad valorem taxes." Id. at 971. The instant case is not analogous. We have here no interrelated promises which will inevitably lead to an increase in ad valorem taxation.
The state in addition argues that validation is precluded by Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304 (Fla. 1971). In Nohrr, we held that a bond-supporting agreement which granted a mortgage with right of foreclosure violated the predecessor to article VII, section 12, absent an approving referendum. The rationale of Nohrr does not apply to the instant case. There is no mortgage with right of foreclosure.[9] Here the bondholders are limited to lease remedies and the annual renewal option preserves the boards' full budgetary flexibility.
Appellees, in addition to asking us to validate these bonds, invite us to reinstitute the "essential governmental function" referendum-exception first enunciated in Tapers v. Pichard, 124 Fla. 549, 169 So. 39 (1936). We rejected the exception in State v. County of Dade, 234 So.2d 651 (Fla. 1970), and decline to reinstate it here.
Our approval of these financing arrangements does not constitute an endorsement of the bonds and certificates of indebtedness to be issued. Questions of business policy and judgment are beyond the scope of judicial interference and are the responsibility of the issuing governmental units. Town of Medley v. State, 162 So.2d 257 (Fla. 1964).
We affirm the judgments of validation.
It is so ordered.
EHRLICH, C.J., and SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
McDONALD, J., dissents with an opinion, in which OVERTON, J., concurs.
McDONALD, Justice, dissenting.
Today the Court approves form over substance. The financial schemes employed in these cases are the equivalent to the issuance of bonds and pledging ad valorem taxes to support them. Thus, I totally disagree that the bonds in question can be approved without a referendum from the owners of freeholds as required by article VII, section 12 of the Florida Constitution. *554 I believe it pure sophistry to say that "these obligations are not supported by the pledge of ad valorem taxation." Majority at 552. If ad valorem taxes are not levied and paid each year for the duration of the agreements the school boards default not only all interest acquired under the agreement for the remainder of the agreement, but they also lose the right to use the preowned property for the remainder of the agreement. Never before have we approved a nonreferendum bond where ad valorem taxes have been involved to the extent they are involved in these cases. By approving these financing agreements we have approved a method of nullifying the provisions of article VII, section 12, Florida Constitution.
It is true that in State v. Miami Beach Redevelopment Agency, 392 So.2d 875 (Fla. 1980), we approved a bond supported in part by ad valorem taxes. I hasten to point out, however, that the extent of that pledge was the tax increment created by the development. These bonds, on the other hand, come from existing ad valorem tax sources, and the schools do not increase the tax base. State v. Miami Beach Redevelopment stated:
What is critical to the constitutionality of the bonds is that, after the sale of bonds, a bondholder would have no right, if the redevelopment trust fund were insufficient to meet the bond obligations and the available resources of the county or city were insufficient to allow for the promised contributions, to compel by judicial action the levy of ad valorem taxation.
392 So.2d at 898. That same court in the same opinion, however, also said:
On the other hand, when a project is financed by the sale of bonds to be repaid with revenues produced by the project supplemented by governmental funds derived from ad valorem taxation, an approving vote of the electorate is required.
[I]n no instance has this Court upheld the pledge of gross revenue of a facility coupled with a supporting pledge of ad valorem taxes. When gross revenues have been pledged with collateral support for operating the facility, the supporting revenues pledged have always been derived from sources other than ad valorem levies.

State v. Halifax Hospital District, 159 So.2d 231, 233 (Fla. 1963).
Id. at 897-98.
These financing schemes are secured by a pledge of ad valorem taxes, at least on a year-by-year basis. This contrasts with the financing plan approved in State v. Brevard County, 539 So.2d 461 (Fla. 1989), where ad valorem taxes were not a part of the financing agreement. If certificates are secured by a pledge of ad valorem taxes, they are bonds and must be approved by the voters. Klein v. City of New Smyrna Beach, 152 So.2d 466 (Fla. 1963).
In practical effect a school board must levy, collect, and pay ad valorem taxes or forfeit its ability to supply a school plant. No school board will do that. When this circumstance exists, the realities of the situation should supercede the technical inability to require the levy of ad valorem taxes. As we did in Volusia County v. State, 417 So.2d 968 (Fla. 1982), we should require approval of the affected ad valorem taxpayers before these financial arrangements obtain approval from this Court.
OVERTON, J., concurs.
NOTES
[1] In the case of Sarasota County, tax-exempt bonds up to $135,000,000; in the case of Collier County, tax-exempt certificates of participation up to $47,500,000; in the case of Orange County (No. 75,154), tax-exempt bonds up to $230,000,000.
[2] Appellee Florida School Boards Association, Inc. is one such not-for-profit entity.
[3] The boards have identified four revenue sources for lease payments: (1) monies paid to them from Florida's Educational Finance Program; (2) monies derived from the Public Education Capital Outlay and Debt Service Trust Fund; (3) monies received from the local government infrastructure sales surtax levied pursuant to section 212.055(2) (1989), Florida Statutes (1989); and (4) to the extent not paid from the foregoing sources, up to one-half of the boards' receipts from the levy of up to two mills of capital outlay millage, authorized by section 236.25(2), Florida Statutes (1989), to pay lease-purchase obligations. The first three sources are non-ad valorem sources; the fourth is from ad valorem taxes.
[4] For a discussion of the "nonappropriation mechanism" as a device to permit financing of essential governmental functions consistent with constitutional debt limitations, see Note, State and Municipal Lease-Purchase Agreements: A Reassessment, 7 Harv.J.L. & Pub.Pol'y 521 (1984) (authored by Reuven Mark Bisk).
[5] Section 75.02, Florida Statutes (1989), provides:

Plaintiff.  Any county, municipality, taxing district or other political district or subdivision of this state, including the governing body of any drainage, conservation or reclamation district, and including also state agencies, commissions and departments authorized by law to issue bonds, may determine its authority to incur bonded debt or issue certificates of debt and the legality of all proceedings in connection therewith, including assessment of taxes levied or to be levied, the lien thereof and proceedings or other remedies for their collection. For this purpose a complaint shall be filed in the circuit court in the county or in the county where the municipality or district, or any part thereof, is located against the state and the taxpayers, property owners, and citizens of the county, municipality or district, including nonresidents owning property or subject to taxation therein. In actions to validate bonds or certificates of debt issued by state agencies, commissions or departments, the complaint shall be filed in the circuit court of the county where the proceeds of the bond issue are to be expended, or where the seat of state government is situated, and shall be brought against the state and the taxpayers, property owners and citizens thereof, including nonresidents owning property or subject to taxation therein.
(Emphasis added.)
[6] The interlocal agreement provided that the city guaranteed to the county certain payments each fiscal year in order to support county revenue bonds. The bonds that the agreement supported had been validated in a separate earlier proceeding.
[7] Article VII, section 12 of the Florida Constitution, provides:

Local bonds.  Counties, school districts, municipalities, special districts and local governmental bodies with taxing powers may issue bonds, certificates of indebtedness or any form of tax anticipation certificates, payable from ad valorem taxation and maturing more than twelve months after issuance only:
(a) to finance or refinance capital projects authorized by law and only when approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation; or
(b) to refund outstanding bonds and interest and redemption premium thereon at a lower net average interest cost rate.
[8] Section 230.23, Florida Statutes (1989), in relevant part provides:

230.23 Powers and duties of school board.  The school board, acting as a board, shall exercise all powers and perform all duties listed below:
... .
(9) SCHOOL PLANT... .
... .
(b) Sites, buildings, and equipment. 
... .
5. Enter into leases or lease-purchase agreements, in accordance with the requirements and conditions provided in s. 235.056(3), with private individuals or corporations for the rental of necessary grounds and educational facilities for school purposes or of educational facilities to be erected for school purposes. Current or other funds authorized by law may be used to make payments under a lease-purchase agreement. Notwithstanding any other statutes, if the rental is to be paid from funds received from ad valorem taxation and the agreement is for a period greater than 12 months, an approving referendum must be held.
[9] In the case of Orange County, the not-for-profit entity intends to mortgage its leasehold interest in the facilities as security for the bonds. Since the mortgage does nothing to encumber the interest of the school board, it is insignificant to the resolution of whether a referendum is required. In this regard, Orange County is no different from the companion cases.