Mr. James D. Dye Attorney for Braden River Fire Control and Rescue District Post Office Box 9480 Bradenton, Florida 34206
Dear Mr. Dye:
You have asked for my opinion on substantially the following question:
Is the Braden River Fire Control and Rescue District authorized to grant a security interest in real property or personal property for a period in excess of twelve months, including the right of foreclosure in the event of the district's default?
In sum:
The Braden River Fire Control and Rescue District may not grant a security interest in real or personal property for a period in excess of twelve months which includes the right of foreclosure in the event of the district's default as such an agreement would violate Article VII, section 12, Florida Constitution. However, the district may consider acquiring property using a lease-purchase arrangement similar to that upheld in State v.Brevard County.
The Braden River Fire Control and Rescue District was created in 1985.[1] Historically, the district's funding sources have been special assessments, charges, and impact fees.[2] With the enactment of Chapter 191, Florida Statutes, independent special fire control districts now have authority to levy ad valorem taxes in addition to non-ad valorem assessments, impact fees and user charges. You question whether the Braden River Fire Control and Rescue District may now give lending institutions security interests with a right of foreclosure for default for either real or personal property.
The "Independent Special Fire Control District Act" was enacted in 1997.[3] The legislative purpose of this act, as expressed in section 191.002, Florida Statutes, is to provide uniformity for independent special fire control districts in: standards, direction, and procedures concerning operations and governance; operations and authority; financing authority; communication and coordination between special fire control districts and other local governments; and the election of members to ensure greater accountability to the public.[4]
Section 191.004, Florida Statutes, states that:
"Each district, regardless of any other, more specific provision of any special act or general law of local application creating the charter of the district, shall comply with this act. It is the intent of the Legislature that the provisions of this act supersede all special act or general law of local application provisions which contain the charter of an independent special fire control district and which address the same subjects as this act, except as such acts or laws address district boundaries and geographical subdistricts for the election of members of the governing board. However, this act does not require any modification to district financing or operations which would impair existing contracts, including collective bargaining agreements, debt obligations, or covenants and agreements relating to bonds validated or issued by the district. Further, this act does not repeal any authorization within a special act or general law of local application providing for the levy and assessment of ad valorem taxes, special assessments, non-ad valorem assessments, impact fees, or other fees or charges by a district."
Thus, the act preempts special act provisions to the extent of any conflict and provides a uniform scheme for accomplishing the goals of independent fire control districts throughout the state. District financing or actions that would impair existing contracts of the district remain unchanged.
Your concern is based on the constitutional limitations on borrowing money by local governmental entities which have ad valorem taxing power set forth in Article VII, section 12, Florida Constitution. This constitutional provision states:
"Local bonds. — Counties, school districts, municipalities, special districts and local governmental bodies with taxing powers may issue bonds, certificates of indebtedness or any form of tax anticipation certificates, payable from ad valorem taxation and maturing more than twelve months after issuance only:
(a) to finance or refinance capital projects authorized by law and only when approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation; or
(b) to refund outstanding bonds and interest and redemption premiums thereon at a lower net average interest cost rate."
The Florida Constitution does not require elector approval when certificates of indebtedness, revenue bonds or security interests are payable solely from sources other than ad valorem taxes and do not otherwise pledge the governmental entity's taxing credit.[5]
Thus, if the district borrows money for the purchase of real or personal property and repays that money solely from any source other than ad valorem tax revenues, no approving election or referendum is required.
In contrast to such an unsecured obligation of a governmental entity, the creation of a security interest in real or personal property with a right of foreclosure has long been recognized by the Florida Supreme Court as a violation of Article VII, section12, Florida Constitution.[6] In Nohrr v. Brevard CountyEducational Facilities Authority,[7] the county proposed to issue bonds to construct educational facilities. There was to be no pledge of general revenue to this repayment. Notwithstanding, the Court held that, in the absence of an election, the trust indenture could not legally include a mortgage on the project with a right of foreclosure because the county would feel a moral obligation to levy taxes to prevent the loss of the property through foreclosure.
In Attorney General Opinion 80-9, this office concluded that a municipality was not authorized to finance the purchase of a computer under a lease-purchase agreement granting a security interest in the equipment with an accompanying right of foreclosure or other remedy to enforce the performance of the city's obligation. The agreement considered in that opinion authorized the lessor to repossess and sell the equipment upon the default of the city, and this office determined that a "security interest" had been created in the equipment. The security interest could result in the city being coerced into levying ad valorem taxes to avoid loss of the equipment, leading to the conclusion that such a contractual financing arrangement constituted an indirect pledge of the city's ad valorem taxing power requiring approval by the electors of the city pursuant to Article VII, section 12, Florida Constitution.[8]
A number of recent Florida Supreme Court opinions have considered lease-purchase arrangements involving local governmental entities with ad valorem taxing power in which the state argued that the agreements might indirectly affect the levy of ad valorem taxes and violate Article VII, section 12, Florida Constitution. Despite its approval of these arrangements, the Court's opinions continue to cite and follow Nohrr and recognize the prohibition against governmental entity's granting security interests with a right of foreclosure in either real or personal property. In those cases the Court has recognized that the property was being rented under the terms of a lease and the only remedies for failure to make payments were contractual remedies under the lease agreement,[9]
as contrasted with a right to foreclose on property.
In an informal opinion to Mr. Lloyd A. Soughers, May 23, 1988, this office considered whether a school board could obtain equipment under a lease-purchase agreement without violating Article VII, section 12, Florida Constitution. The agreement in that opinion provided for the voluntary return or transfer of the equipment in the event of specified conditions which would terminate the lease-purchase agreement. If the school board did not return the equipment, however, the lessor was limited to a suit for compensatory damages and could not sue for specific performance of the covenant to return the property. This office concluded that such a lease-purchase agreement would not result in an indirect pledge of the credit of the school board in that the board could not be coerced to levy ad valorem taxes in order to avoid loss of the equipment and lessor's only course of action in the event of a default was an action for damages.[10]
In contrast to these opinions relating to lease-purchase agreements, you have specifically asked about the authority of the district to grant security interests in property with a right of foreclosure for default. Based on the discussion above, it is my conclusion that the reasoning in the Nohrr case would apply. However, the district may wish to consider acquiring property through use of a lease-purchase agreement with annual renewal provisions such as that considered by the Court and approved inState v. Brevard County,[11] or the agreement discussed in the Informal Attorney General's Opinion to Lloyd Soughers discussed above.
In sum, it is my opinion that the Braden River Fire Control and Rescue District may not grant a security interest in real or personal property which includes the right of foreclosure in the event of the district's default in the absence of voter approval as such an agreement would violate Article VII, section 12, Florida Constitution.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] See, Ch. 85-454, Laws of Florida, as amended by Chs. 87-509, 90-455, 91-396, 93-395, and 94-417, Laws of Florida.
[2] See, s. 5, Ch. 85-454, Laws of Florida.
[3] The act was amended by Ch. 98-320, Laws of Florida. See, ss.191.006 and 191.015, Fla. Stat. (1998 Supp.).
[4] Section 191.002, Fla. Stat.
[5] See, State v. Board of Public Instruction, Okaloosa County,214 So.2d 723 (Fla. 1968); State v. Orange County, 281 So.2d 310
(Fla. 1973), in which the court upheld the issuance of capital improvement bonds without an election to finance the acquisition and construction of the county's share of racetrack and jai alai funds; Orange County Civic Facilities Authority v. State,286 So.2d 193 (Fla. 1973), holding that, with the sole exception of ad valorem tax revenues, any revenues of a county could be pledged for the retirement of the proposed civil facilities revenue bond issue.
[6] See generally, Betz v. Jacksonville TransportationAuthority, 277 So.2d 769 (Fla. 1973); State v. Putnam CountyDevelopment Authority, 249 So.2d 6 (Fla. 1971); Hollywood, Inc.v. Broward County, 90 So.2d 47 (Fla. 1956).
[7] 247 So.2d 304 (Fla. 1971).
[8] And see, Ops. Att'y Gen. Fla. 76-121 (1976) and 73-164 (1973) (deferred payment plan created a conditional indebtedness on the part of the local governmental entity in the nature of a legal liability for a capital venture predicated upon the general credit; the plan placed the local governmental entity in a position of being coerced into levying a tax in order to prevent the loss of the property by foreclosure and was not permissible without an approving referendum).
[9] See, State v. Brevard County, 539 So.2d 461 (Fla. 1989) (county's lease-purchase arrangement for equipment, whereby county established not-for-profit corporation to purchase equipment for lease to county was valid), and State v. School Board of SarasotaCounty, 561 So.2d 549 (Fla. 1990) (approving ground lease of school land to not-for-profit entities, board's leaseback of facilities to be constructed, and trust agreements conveying entities' lease rights to trustees that were to market bonds and disburse funds to finance construction). Cf., Murphy v. City ofPort St. Lucie, 666 So.2d 879 (Fla. 1995) (covenant to budget and appropriate non-ad valorem revenues to service debt on bonds, did not violate local bond provision of State Constitution, as non-ad valorem revenues were supplemental, and any potential impact on ad valorem taxation was incidental).
[10] And see, Op. Att'y Gen. Fla. 88-53 (1988), in which this office concluded that the Southwest Florida Water Management District was authorized to enter into a lease-purchase agreement with a nonprofit corporation and that such an agreement would not be an indirect pledge of the district's ad valorem taxing power violating Article VII, section 12, Florida Constitution, since the agreement precluded repossession by the lessor of the building covered by the agreement.
[11] 539 So.2d 461 (Fla. 1989).